Chappel v. Brockway.

---

**CHAPPEL vs. BROCKWAY.**

*Contracts in restraint of trade,* which *totally* prohibit the pursuit of an occupation, or the carrying on of a particular business, *at any place* in the state, are *void,* as detrimental to one party without being beneficial to the other, and also as *injurious to the public,* let the *consideration* moving to the contract be what it may : but contracts for a *limited restraint,* as that a man will not exercise his trade or carry on business in a *particular place* or within *certain limits,* are *valid* and will be enforced by the courts, *if it be shown* that they were entered into for *good reasons.*

*It seems* that it is not enough that there be *a consideration,* such as would uphold a contract *in which the public have no interest;* but that whate e may be the *pecuniary consideration,* it must appear in addition that there was some *good reason* for entering into the contract, and that it imposes no restraint upon one party which is not beneficial to the other.

Chappel v. Brockway.

How far the restraint may extend, depends upon the nature of the business to which the contract relates; as a general rule, it may be said to extend far enough to afford a *fair protection* to the purchaser of the business which the seller agreed to relinquish.

Where the plaintiff and defendant were competitors in running packet boats on the Erie canal *between Rochester and Buffalo*, and the defendant, *for the consideration of* $12,500, was induced to sell out to the plaintiff his boats and other property connected with the business, and to enter into a *bond* in the penal sum of $25,000, that he would not *at any time thereafter*, own, run or be interested in any line of packet boats on the canal, *within the limits* before occupied by him : *it was held*, that the bond was valid ; there being not only a *sufficient pecuniary consideration*, but a *good reason* for the contract.

CONTRACTS in restraint of trade. The plaintiff declared on a bond dated 9th July, 1835, in the penal sum of $25,000, executed *to the plaintiff* by the defendant ; which, after reciting that the defendant had been engaged in running a line of packet boats upon the Erie canal, that he had on the day of the date of the bond sold his boats and other property connected with them to the *Rochester and Buffalo Packet Boat Company*, for the *consideration of* $12,500, and that he had agreed with the company as a part of the sale and purchase of the boats, &c. that he would not at any time thereafter run a line of packet boats, or be connected in any way with the packet boat business on the Erie canal : was *conditioned* that the defendant should not at any time thereafter, *own, run* or be *interested* in any line of packet boats on the Erie canal from Rochester to Buffalo ; and a clause was inserted that in case of breach, the bond might be prosecuted for the benefit of the company. The plaintiff assigned three several breaches : 1. that on 1st of April, 1836, the defendant *commenced running* a line of packet boats on the Erie canal from Rochester to Buffalo, and continued to run the same until December following, &c. ; 2. that the defendant *became interested* in a line of packet boats, &c. ; and 3. that he *owned* a line of packet boats, &c.

The defendant put in a great number of pleas. His *tenth* plea was substantially, that himself and the Rochester and Buffalo Packet Boat Company were competitors for business on the Erie canal, each running a line of packet boats between Rochester and Buffalo ; that the company, by re-

Chappel v. Brockway.

ducing the rates of fare, compelled him to sell out to them; that the object of the company was to obtain a monopoly, and when they had no competitor they raised the prices and thus enriched themselves at the expense of the public. Under these circumstances he became the owner of a *new* line of packet boats, by means of which travellers were again furnished with a *cheap*, safe and convenient mode of transportation. To this plea the plaintiff *demurred.* The defendant's *eleventh* plea was substantially like the *tenth ; to it* the plaintiff replied ; the defendant rejoined, and the plaintiff *demurred* to the rejoinder.

*A. Taber*, for the plaintiff.

*J. A. Spencer*, for the defendant.

*By the Court*, BRONSON, J. The common law will not permit individuals to oblige themselves by a contract, where the thing to be done or omitted is injurious to the public. Contracts in restraint of trade are, for the most part, contrary to sound policy, and are consequently held void. This is the general rule. There may be cases where the contract is neither injurious to the public nor the obligor, and then the law makes an exception, and declares the agreement valid. The general presumption is against all contracts in restraint of trade, and consequently it lies upon him who seeks to enforce such an obligation, to show that it is free from objection.

Contracts which go to the total restraint of trade, as that a man will not pursue his ocupation or carry on business any where in the state, are void, upon whatever consideration they may be made. They must be injurious to the public, and no good reason can be shown why one individual should thus fetter himself, or another individual should contract for the restraint. The obligation is injurious to one party, without being beneficial to the other. But there may be good reasons for allowing parties to contract for a limited restraint, as that a man will not exercise his trade or carry on busines in a particular place, and when such reasons are shown, the contract will be upheld and enforced.

The common law rule on this subject, undoubtedly had its origin at a time when there were, comparatively very few mechanics and tradesmen, and when there was much more reason for guarding against restraints of this kind than there can be now. Still I am unable to say, that the reason of the rule has so entirely ceased, that the rule itself is at an end.

It must be admitted, however, that courts at the present day look upon contracts of this description with much less jealousy than they did at a former period. At one time the contract, however free from objection in other respects, would have been held void, if made in the form of a *penal* obligation. But there is no longer any doubt that the party may bind himself to the performance of such a contract under a penalty, as well as by a covenant or promise. The modern decisions have also allowed a larger restraint than would formerly have been sanctioned, and one or two of the recent cases have gone nearly, if not quite, far enough to give up the principle upon which the courts originally acted, though without professing to do so.

The early cases relating to restraints of trade were reviewed, and the whole subject was very elaborately and ably considered by Parker, Ch. J., in the leading case of *Mitchell* v. *Reynolds*, 1 P. Wms. 181, which was decided in 1711; and very little light has been shed upon the subject since that time. The consideration which will uphold a contract of this kind, according to Ch. J. Parker, is that which shows *it was reasonable for the parties to enter into it* —that it was *a proper and useful contract*, such as could not be set aside without injury to *a fair contractor;* and he afterwards adds, that a particular restraint is not good *without a just reason and consideration.* It is not, I think, enough that there may be such a consideration as would be sufficient to uphold a contract in which the public had no interest. Whatever may be the pecuniary consideration, it must appear, in addition, that there was some good reason for entering into the contract, and that it imposes no restraint upon one party, which is not beneficial to the other. In *Horner* v. *Ashford,* 3 Bing. 322, Best. Ch. J., said, that

restraints extending to the whole kingdom were void, "be-cause no good reason can be imagined for any person's imposing such a restraint upon himself. But it may often happen that individual interest and general convenience render engagements not to carry on trade or to act in a profession in a particular place, proper." In *Horner* v. *Graves*, 7 Bing. 735, the defendant bound himself not to exercise the trade of a surgeon-dentist within 100 miles of the city of York, and the court held the contract void, on the ground that it was for a larger restraint than was necessary for the protection of the plaintiff in the enjoyment of his trade. Tindal, Ch. J., said it was an unreasonable restraint, which interfered with the interests of the public. The same principle was recognized by Abbott, Ch. J., in *Hayward* v. *Young*, 2 Chitty's R. 407, though the contract in this case was held valid.

In *Pierce* v. *Fuller*, 8 Mass. R. 223, there was only a nominal consideration of one dollar, and it is difficult to discover on the face of the contract any very good reason for upholding it; but the court thought there were sufficient reasons for enforcing it. Sedgwick, J., who delivered the opinion, admitted that it must appear from the special circumstances, that the contract is reasonable and useful; and again—"the consideration must always be shown, that the contract may be supported by the special circumstances which induced the making of it." It may, I think, be questioned, whether the case is quite consistent with the principle on which the court professed to act. A similar remark is applicable to the decision in *Palmer* v. *Stebbins*, 3 Pick. 188. But it does not appear that the court intended to lay down a new rule.

In applying what has been said to the case at bar, we shall find no difficulty in pronouncing the contract between these parties valid. Laying the pleas out of view for the present, and looking at the contract alone, it appears that the defendant, for the consideration of *twelve thousand five hundred dollars*, sold out his stock in trade, and agreed that he would not thereafter engage in the same business in such a way as to injure the purchaser. There was not only a suf-

ficient pecuniary consideration, but a good reason is shown for entering into the engagement. Such an agreement would have been held valid more than two centuries ago, when the policy of guarding against contracts in restraint of trade was much more apparent than it is at this day of unparalleled competition. *Broad* v. *Jollyfe*, Cro. Jac. 596. Indeed, this branch of the case is so free from difficulty that I should have said less upon it, were it not for another case now before us, *Ross* v. *Sadgbeer*, *post*, which involves the same inquiry in another form.

But it is said that a restraint from Rochester to Buffalo, a distance of about 100 miles, is too large—that it is not confined to a particular place. The objection seems to take it for granted that a valid restraint cannot extend beyond a particular town or city. That is not the rule. A man cannot for money alone, where he has no other interest in the matter, purchase a valid contract in restraint of trade, however limited may be the circle of its operation. But when a good reason appears for allowing the parties to contract, the restraint may extend far enough to afford a fair protection to the obligee. How far this will be, must depend in a great degree upon the nature of the trade or business to which the contract relates.

In *Davis* v. *Mason*, 5 D. & E. 118, the defendant agreed not to exercise the business of a surgeon, apothecary, and man-midwife within ten miles of *Thetford*, and judgment was given for the plaintiff, on a breach of the agreement. Lord *Kenyon* said, he did not see that the limits were necessarily unreasonable. He added, what is equally applicable in the case at bar—" neither are the public likely to be injured by an agreement of this kind, since every other person is at liberty to practice as a surgeon in this town." In *Nobles* v. *Bates*, 7 Cow. 307, the restraint extended over a circle of 40 miles diameter, and was held good : and in *Hayward* v. *Young*, 2 Chitty's R. 407, a restraint of the like extent was upheld. In *Pierce* v. *Fuller*, 8 Mass. R. 223, an agreement not to run a stage between Boston and Providence ; and in *Perkins* v. *Lyman*, 9 Mass. R. 522, a contract not to trade from Boston to the north west coast of

America for the period of seven years, were severally held unobjectionable. In *Bunn* v. *Guy*, 4 East, 190, a practicing attorney agreed to relinquish his business and recommend his clients to two other attorneys, and that he would not practice within a circle of 300 miles diameter, having London for its centre. This, though it certainly was a very large restraint—including a good deal of sea, as well as land —was nevertheless held valid. In *Horner* v. *Graves*, 7 Bing. 735, the defendant agreed not to practice as a surgeon-dentist within 100 miles of the city of York, where the plaintiff carried on that business ; and this was held an unreasonable restraint, because it was larger than was necessary to afford a fair protection to the plaintiff in the enjoyment of his trade.

The last case to which I have referred gives the true rule on this subject, and is decisive of the question under consideration. The defendant sold out his business of running packet boats between Rochester and Buffalo ; and that cannot be an unreasonable restraint, which is only co-extensive with the business which the defendant agreed to relinquish and the purchaser expected to acquire.

Neither the 10th nor the 11th plea contains any legal answer to the action. The principal merit of both seems to consist in ascribing a questionable motive to the plaintiff, or those for whom he is trustee, for entering into a contract which is apparently free from objection. In the 11th plea the defendant is not quite consistent with himself. He first complains of the competition which compelled him to carry passengers at half price ; and then claims the right to break his contract for the purpose of again entering into the competition.

The defendant can gain nothing by giving the transaction a bad name, unless the facts of the case will bear him out. He calls this a monopoly. That is certainly a new kind of monopoly which only secures the plaintiff in the exclusive enjoyment of his business as against a single individual, while all the world beside are left at full liberty to enter upon the same enterprise. If we strike out this offensive word, little will remain, either of the pleas or of the argument, that was built upon them.

The 10th plea will then only amount in substance, to this : —the packet boat company purchased out the defendant for the purpose of bettering their own condition; or, what amounts to the same thing, for the purpose of obtaining a better price for carrying passengers. Now this is nothing more than the usual motive for entering into such contracts, and we might as well declare them all void at once, as to give way to this objection. It does not necessarily follow that the public was injured, because the price for carrying was raised. The traveller has other interests at stake, beside that which immediately touches his pocket, and there may be such a thing as riding at too cheap a rate. Competition in business, though generally beneficial to the public, may be carried to such excess as to become an evil.

But it is enough that the contract is good upon its face, and the plea does not clearly prove that it was injurious to the public. In *Richardson* v. *Mellish*, 2 Bing. 229, one objection was that the contract was contrary to public policy, and *Best*, Ch. J. said, he was not much disposed to yield to such arguments, and he thought an unquestionable case should be made out before the courts would set aside a contract on that ground. And *Burrough*, J. protested against arguing too strongly upon public policy : he said, " it is a very unruly horse, and when once you get astride it, you never know where it will carry you. It may lead you from the sound law." There is force in this remark.

So far as the 11th plea raises the objection that the contract was against sound policy, it has been answered already. As to the residue of the plea, I hardly know what was intended, unless the defendant meant to make out that this was a case where he could have pleaded *non est factum*. But that is not his plea—on the contrary, he admits that the instrument is his deed. He does not allege duress, or any thing else going to the validity of the deed; but his complaint is, if it amount even to so much, that he was driven to make the sale by a very active and powerful competition in business. Although this competition may have been injurious to him, it was not illegal. And as to the charge of *combination* and *confederacy*, having for its object a *mono-*

Chappel v. Brockway.

*poly*, the whole amounts to little more than a string of words, which are in bad repute, because they most commonly stand connected with bad acts. Fifty persons of great wealth and influence, as the plea alleges, combined together to run a line of packet boats, in opposition to the defendant's line—all which it was quite lawful for them to do. But they not only intended to run an opposition, but intended to carry passengers at half the fair price, and thus get away the defendant's business, unless he would also carry at half price; and this too was all lawful. The end at which they aimed in all this matter, was to get a monopoly of the business, so far as competition depended on the defendant. This brings us back again to the question of public policy, which has already been considered.

There is a class of cases where the contract, though apparently good on the face, is nevertheless tainted by its immediate connection with some illegal transaction. But I am unable to comprehend how a contract can be declared void, when the motive for making it was not illegal, and when it has neither led, nor was intended to lead, to any transgression of the law. If any danger to public interests can justly be apprehended from allowing many men of wealth and influence to associate as partners for the purpose of carrying on business; or if that competition which results from the enterprising character of our citizens and the active employment of capital ought to be regulated or restrained, it belongs to the legislature, and not the courts, to apply the proper remedy.

I see nothing in the pleas to change the character of the transaction, from what it appears to be on the face of the contract.

Judgment for plaintiff.*

---

* See next case.