Ranney, J.
As we have arrived at the conclusion that the declaration in this case is not sufficient to sustain the recovery, it seems only necessary, to guide the parties in such further proceedings as may be had, to express our views upon the validity, construction, and legal effect of the covenant upon which the action is brought. Werk,'Lange, and one Verdin were partners in business. What the business was does not appear from the agreement, nor is it averred in the declaration; but we suppose it to have been the manufacture of stearin and star candles. On the 28th of July, 1843, by articles of agreement under seal, signed by them all, the partnership was dissolved, and Lange sold to Verdin and Werk his interest in it for the consideration of $11,500. Something over $6,000 "Sf this amount was paid at the time, and the balance secured by promissory notes due at different times in the years 1843, 1844, and 1845.
*In this agreement the following covenant is found, the alleged breach of which forms the subject-matter of this suit, viz :
“ And the said Philip F. Lange, for himself, his heirs, executors, etc., does hereby covenant to and with said Michael Work, individually, that he, the said Lange, will not establish, or be connected, either directly or indirectly, with any person (without the consent of Werk in writing) in the star-candle or stearin business, or the manufacturing of either or both of said articles, at any place within the county of Hamilton, in the State of Ohio, or at any other place whatsoever in the United States of America; or give his assistance, or communicate his knowledge of said business to any person whatsoever, until the 1st. day of January, a. d. 1846, under the forfeiture of $4,000 to said Werk, his heirs, executors, or administrators, as liquidated damages; and it is agreed that, in case of any violation of this stipulation on the part of said Lange, the amount which may be found due said Lange on the 1st day of January, 1846, shall be retained be said Werk, his heirs, etc., as a part of said liquidated damages.”
This covenant is claimed to be one in general restraint of trade; *457 if not general, it is claimed to have been entered into without consideration and good reason, and in either event to be void. It is .also insisted, that if a recovery can be had for its breach, it should only be for the actual amount of injury sustained, and not for the amount named as liquidated damages.
1. The general principles applicable to contract of this character must be regarded as well settled, both in England and this country; From a very early period in the history of common law, contracts imposing a general restraint on trade were declared void. As early •as the reign of Henry Y., Hall, J., is reported to have gone off in a passion at the sight of one, and to have expressed himself in bad French, with more fervor than decency: “A ma intentvous purros avoir demurre sur luy que obligation est void eo que le condition ■est ^encounter common ley, et per Dieu, si le plaintiff fut icy, il irra al prison tang il ul fait fine al Roy.” It is but justice, however, to add, that Parker, J., in his excellent opinion in Mitchell v. Reynolds, 1 P. Williams, 181, on consideration of the circumstances, says he “can not but approve the indignation that judge expressed, though not his manner of expressing it.”
This opinion of Parker, J., expressing the views of the whole court, after several arguments at the bar, contains a very thorough exposition of the whole subject, and has been substantially followed in all the subsequent cases.
In that case, the defendant had assigned to the plaintiff a lease of a messuage and bake-house for the term of five years, and bound himself not to exercise the trade of a baker in the parish where it was situated, during that time.
It was held that, “ general restraints are all void, whether by bond, covenant, or promise, with or without consideration, and whether it be of the party’s own trade or not; ” not because they are against law, in the proper sense, but because of the “ mischief which may arise from them : 1. To the party, by the loss of his livelihood, and the subsistence of his family; 2. To the public, by depriving it of a useful member; ” and, “ because, in a great many instances, they can be of no use to the obligee; which holds in all cases of general restraint throughout England; for what does it signify to a tradesman in London, what another does at New Castle ? And surely it would be unreasonable to fix a certain loss on one side, without any benefit to the other.” “ No man can contract not to use his trade at all; ” but partial restraints, extending to par *458 ticular places or persons, if lawfully and fairly obtained, may bogood; but they are not good without just reason and consideration ” “ appears to make it a proper and useful contract, and such as can not be set aside without injury to a fair contractor.”
The opinion proceeds: “But here it maybe made a question that suppose it does not appear whether or no the contract be made upon good consideration, or be merely injurious and oppressive, what shall be done in that case ? I do *not see why that should not be-shown by pleading, though certainly the law might be settled either’ way without prejudice; but, as it now .stands, the rule is, that wherever such contract stat indifferr enter, and, for aught appears, maybe-either good or bad, the law presumes it prima facie to be bad, and that for these reasons: 1. In favor of trade and honest industry. 2. For that there plainly appears a mischief, but that the benefit (if any) can only be presumed; and in that case the presumptive benefit shall be overborne by the apparent mischief. 3. For that the mischief is not only private, but public.”
It concludes thus: “In all restraints of trade, where nothing' more appears, the law presumes them bad; hut if the circumstances are set forth, that presumption is excluded, and the court is to judge of those circumstances and determine accordingly, and if upon them it appears to be a just and honest contract, it ought to be maintained.”
I have extracted somewhat at length from this case, not only because it contains the substance of all the English cases, but because it seems to us to place the whole matter upon the true ground. Applications of these doctrines, under a variety of circumstances, may be found in the Master, etc., of Gunmakers v. Fell, Willes, 328; Stuart v. Nicholson, 2 Bing. N. C. 113; Chesman v. Nainby, 3 Bro. P. C. 349; Gale v. Reed, 8 East, 83; Homer v. Ashford, 3 Bing. 328; Young v. Timmins, 1 C. & I. 331; Davis v. Mason, 5 Term, 118; Homer v. Graves, 7 Bing. 743; Ward v. Byrne, 5 M. & W. 548; Green v. Price, 13 M. & W.; Saniter v. Ferguson, 62 Eng. Com. Law, 721.
These cases fully justify the conclusion, that a contract in restraint of trade can only be enforced, when it is made to appear from the pleadings and proofs : 1. That the restraint is partial; 2. That it is founded upon a valuable consideration; and 3. That it is reasonable and not oppressive. In respect to the last of these requisites, Ch. J. Tindal, in Homer v. Graves, says: “We can not see how a bet *459 ter test can be applied to the question, whether reasonable or not, than by considering whether the restraint is such only as to afford. *a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party, can be of no benefit to either; it can only be oppressive, and if oppressive, it is in the eye of the law unreasonable. Whatever is injurious to the interest of the public is void, on the ground of public policy.”
The American cases are no less explicit. In Pierce v. Fuller, 8 Mass. 223, arising upon an agreement not to run a stage between Boston and Providence, the court, after stating the general principles as in Mitchell v. Reynolds, add: “And therefore all contracts-barely in restraint of trade, where no consideration is shown, are-bad; and to make them valid, the consideration and special circumstances inducing the arrangement, must be shown to the court, and approved of by it.” See also Palmer v. Stebbins, 3 Pick. 188.
In Chappell v. Brockway, 21 Wend. 157, a penal bond, reciting-a sale by the defendant to the plaintiff, of a line of packet-boats on the Erie canal, for the consideration of $12,500, and by which the-defendant bound himself not to run a line of packet-boats on the canal thereafter, was hold good; there being not only a sufficient pecuniary consideration, but a good reason shown for the contract.
In the opinion of the court, delivered by Bronson, Jj, the principles governing such contracts are very clearly stated. After-alluding to the general doctrine, that the common law will not permit individuals to oblige themselves by contract, when the thing-to be done or omitted is injurious to the public; and that, for this reason, contracts in restraint of trade, are for the most part void— those in general restraint conclusively so, and those in partial restraint also illegal unless good reasons are shown for entering into-them—he says : “ The general presumption is against all contracts in restraint of trade, and consequently it lies upon him who seeks to enforce such an obligation, to show that it is free from objection.” “A man can not, for money alone, where he has *no other interest in the matter, purchase a valid contract in restraint of trade, however limited may be the circle of its operation.” And again: “ It is not, I think, enough that there may be such a consideration as would be sufficient to uphold a contract in which the public had no interest. Whatever may be the pecuniary consider *460 .ation, it must appear, in addition, that there was some good reason for entering into the contract, and that it imposes no restraint upon one party, which is not beneficial to the other.” “ But when a good reason appears- for allowing the parties to contract, the restraint may extend far enough to afford a fair protection to the ■obligee. How far this will be, must depend in a great degree upon the nature of the trade or business to which the contract relates.”
Boss v. Sadgbeer, 21 Wend. 166, was an action of debt on a jienal bond, conditioned that the defendant should not, for the term often years, be engaged in the manufacture of ashes or soap, within forty miles of Lockport.
The declaration was demurred to, because neither the bond on its face, nor the declaration, showed any sufficient consideration or .good reason for entering into the contract. It was insisted by the plaintiff, that a consideration should be implied from the seal, and that it was unnecessary to set it out. But the court sustained the •demurrer and gave judgment for the defendant.
The same judge said : “ If we imply a pecuniary consideration, however large it may be in amount, it will not remove the difficulty 'Under which the plaintiff labors. It must appear that he purchased ■the defendant’s works, or a secret which he possessed in relation to the manufacturing of ashes, or that there was some other good reason for taking this bond. Otherwise, it was a contract to deprive a man of his livelihood, and the public of a useful member, •without any benefit to the plaintiff, which the law will not permit.”
Tested by these principles, the covenant before us is clearly illegal and void, in so far as it extends to the prohibition of the whole United States. "No case is to be found where such *a contract has been upheld, which covered the whole of England or a «tato of this Union ; and for much stronger reasons, it must be void when extended over a country many times larger than either. But we are of opinion the covenant is divisible, and may be enforced for a breach committed in Hamilton county, provided the •other requisites to its. validity exist. When the agreement is fairly considered, it contains three distinct undertakings on the part of Lange: 1. That he will not, until January 1, 1846, be connected with the manufacture of stearin or star candles in the county of Hamilton. 2. That he will not during the same time be concerned In the business at any other place in the United States. 3. ’That h.e *461 will not during that period give his assistance, or communicate his knowledge of the business to any other person whatsoever.
The second of those we have said is void, and the third is quite as: clearly so, since it'covers as much territory, and deprives the party of the use of the indispensable means to the prosecution of the business in any form, at all other places in the United States. But the-second does not include the territory covered by the first. The first, is expressly confined to Hamilton county, and the second as expressly limited to other places outside of its limits, and within the-United States.
The cáse in this particular is not to be distinguished from Green v. Price, 13 M. & Welsh. 695. In that case Price covenanted not to-carry on the trade of a perfumer in the cities of London and Westminster, “ or within six hundred miles of the same.”
The court held the covenants divisible, and while the last was unreasonably large, they gave judgment for the plaintiff for five thousand pounds as liquidated damages on the first.
So in Nicholls v. Stretton, 10 Q. B. 346, the defendant, an articled clerk to the plaintiff (an attorney) for five years, agreed that he would not act as attorney or agent for any one that had then, or-should thereafter, be the client or correspondent in business of the plaintiff.
*The court held these covenants divisible, so as to prohibit the defendant from being engaged for any one that had then been, or might during the term be the client of the plaintiff; but an unreasonable restraint of trade as to those who became such after tlieterm expired.
But when the declaration is subjected to the test of these doctrines, it seems to us plainly defective in substance. Neither the agreement itself, nor the declaration,'shows any good reason for-entering into the covenant. In neither does it appear that the-partnership interest sold by Lange to Verdin and Werk, was an interest in a stearin and star-candle manufactory; and that they, orWerk alone, intending still to pursue the business, to avoid his competition, contracted with, and paid him a fair consideration, to discontinue it for a limited time in Hamilton county. It- is entirely consistent with the record, that the partnership interest might liavo been in a cotton-manufactory, and that neither Verdin nor Werk, nor the latter individually, ever had or ever intended to manufacture stearin or star candles. These, or something equivalent, are-. *462 material, traversable facts, necessary to be averred to relieve tbe ■contract from the taint of illegality, which the law presumes against it; and while they may be very well known to the parties and their •counsel to exist, they can only be known to us, and their sufficiency determined, when properly averred in the declaration.' Without «uch averments we are bound to presume the contract unreasonable and oppressive, as tending to deprive the defendant of his livelihood, and society of the labor and skill of a useful member, without .any corresponding benefit, or need of protection, to the • plaintiff. 'The pecuniary consideration, we are inclined to think, is sufficiently averred. If, in fact, this covenant was made, as an inducement to effect the sale of the partnership interest, and thus constitute a part ■of the transaction, it is not only honest that it should be observed, but no court would be authorized to separate the consideration paid for that interest from the covenant that induced the payment; and although this connection does not very ^distinctly appear from the face of the agreement, yet we are disposed to think with the court, in Boss v. Sadgbeer, that the covenant may be sustained "by averring such connection, and the attendant circumstances to make the contract reasonable, in the declaration.
2. Are the damages recoverable on a breach of the covenant liquidated by the agreement of the parties? It is certainly competent for the parties to agree upon a definite sum, as that which «hall be paid to the party who alleges and establishes a violation of an agreement, instead of leaving it open to the assessment of a jury. The question is, have they done so in this instance ? If they have, we have no more power to disregard it than any other ■provision of the contract; and in endeavoring to arrive at their intention, we must consider the language employed in its application to the subject-matter of the contract. Arbitrary rules can not help us, and judicial decisions are of less value than upon most ■other questions, as each case depends so peculiarly upon its own circumstances. Some general rules, however, have been found useful as guides in arriving at the intention of the parties; and as the ■stipulated sum may.greatly exceed the actual injury, courts have uniformly regarded it as in the nature of a penalty to secure the .actual damages, unless it was clearly intended otherwise by the parties when the contract was made. .Indeed, judges have been .astute in making distinctions to avoid treating the sum as liquidated damages; in some cases, it would seem, as stated by Chief *463 Justice Best, in Crisdee v. Bolton, 3 Car. & Payne, 240, “endeavoring to make better contracts for parties than they have made for themselves.”
But we can not doubt that the parties to this covenant intended to fix conclusively the sum Lange should pay if he violated it. In the first place, they have twice denominated it “ liquidated damages.” This, I consider, is not necessarily conclusive; but it must be supposed this language was void in its ordinary sense, unless there is something in the other parts of the agreement, or the nature of the contract, to rebut the presumption. But what seems quite conclusive of *the intention, is the further stipulation that Werk should retain any part of the consideration still in his hands, on the 1st of January, 1846, “as part of said liquidated damages.” It is evident that no ascertainment of the actual injury is here contemplated; but Work had the absolute right to apply all that might be then unpaid, although it might exceed many times the damages he had sustained, and if it did not amount to the full sum of $4,000, it was still declared to be but part payment of the liability. It is very true, as insisted by the plaintiff’s counsel, that where the contract contains several stipulations of various degrees of importance, as to some of which the damages might be considered as liquidated, while for others they may be deemed unliquidated, and a sum of money is made payable on a breach of any of them, the courts have generally held it to be a penalty only, although it was stated as liquidated damages in the contract. Kemble v. Farren, 6 Bing. 141, is a specimen of this class of cases. The defendant had agreed with the plaintiff to act as principal comedian at Covent Garden, and to conform to its rules, one of which was that the plaintiff should pay £3 6s. 8d. every night that the theater should be open, with a stipulation that if either party failed to fulfill his agreement, he should pay to the other £100 liquidated damages. Chief Justice Tindal held this stipulation to relate, by express and positive terms, to all breaches of every kind, and thinking it altogether impossible that the parties intended “ that a very large sum should become immediately payable in consequence of the non-payment of a very small sum,” he held the sum stated a penalty, and, as it seems to us, very reasonably; although Park, B., in Atkyns v. Kinnier, 4 Excheq. 776, considered the case “ somewhat stretched.” But here are no stipulations of different degrees of importance. Lange undertook that he would not in any way, *464 either directly or indirectly, engage in the specified business in-Hamilton county until January 1,"1846. There was nothing to be done, and but one thing to be omitted; and from the subject-matter-of the contract, the case falls ^directly within another rule much better settled—that where, independently of the stipulation, the damages would be wholly uncertain and incapable of being ascertained except by conjecture, they will be considered as liquidated, if they are so denominated in the instrument. Sedg. on. Dam. 422; 2 G-reenl. Ev. 213, sec. 259.
Nothing could be more uncertain and conjectural than the damages arising from the breach of covenants of this character; and-hence, in this class of cases, the rule has been adhered to with scarcely an exception. The damages were considered as liquidated in Pierce v. Fuller, 8 Mass. 222, before cited, although they were not so described in the bond; and in Dakin v. Williams, 17 Wend. 447; S. C. in error, 22 Wend. 201, upon a covenant restraining the-defendant from establishing or assisting in the publication of a paper-in the city of Utica, for the performance of which he bound himself in the sum of $3,000, “fixed and settled as liquidated damages;” and'; also in Shiel v. McNitt, 9 Paige, 101. They were so hold in Green v. Price, 13 M. & W. 695, where the defendant engaged not to carry on the business of a perfumer in London and Westminster, in the sum of £5,000 as “liquidated damages;” ia Sainter v. Ferguson, 62 E. C. L. 721, where the defendant bound himself not to practice as a surgeon at M., or within seven miles of it, “under a penalty of £500;” and in Atkyns v. Kinnier, 4 Exch. 776, where the defendant bound himself not to practice as a surgeon at No. 28 Dorset Crescent, or within two and a half miles thereof, nor attempt to prevail on any of the patients of the plaintiff to withdraw from him, in the sum of £1,000, “as liquidated damages, and not by way of penalty.”
Without adverting to other errors assigned, we are of opinion that the declaration is insufficient, and that the Superior Court erred in overruling the demurrer filed to it; and for this cause, the judgment of that court, as well as the judgment of the district court; affirming it, are reversed, and the cause sent to the court of common pleas of Hamilton county for further proceedings.