Minshall, J.
The question in this case arises on a demurrer to the petition, which was sustained in the common pleas, and the judgment was affirmed in the circuit court. From the petition and the agreement annexed to it, it appears that Xavier and Lucas Fringeli, as partners under the name of The Fringeli Rule Company, werecarryingonthe business at Cleveland, Ohio, of manufacturing and selling rules and other instruments used principally in measuring lumber ; and that the plaintiff, The Lufkin Rule Company, an Ohio corporation with its principal office at Saginaw, Michigan, engaged in the same business, on January 28, 1893, purchased the business and assets of the Fringelis, together with the good will of the firm, they agreeing not to engage in the same business, directly or *602 indirectly, in the state of Ohio or in the United States for a period of twenty-five years. The Fringelis also assented to the statement, contained in the agreement between the parties,44 that the demand for the different kind of rules which they producéis limited as to quantity and restricted to the section of the United States where lumber is manufactured and handled; and the parties of the second part (Lufkin Rule Company) have ample facilities to supply the demand in all sections of the United States, promptly, at reasonable figures. ” Afterwards, the agreement having been performed on the part of the plaintiff, the defendants violated it and continues to violate it, by carrying on the same business with others at Cleveland, Ohio, in the name of the Cleveland Rule Company. It asks for liquidated damages as fixed by the agreement, and for an injunction restraining the defendants from further prosecuting the business.
It is the settled rule in this state that all agreements ixi general restraint of trade are against public policy and void; butitis held that agreements that only impose a partial restraint, made in connection with the purchase of a business, that are reasonably necessary to make available the good will purchased with the business, and are reasonable and not oppressive, may- be enforced. The case of Lange v. Werk, 2 Ohio St., 519, is the leading one on the subject. The authorities there, both in England and this country at that time, were so fully and intelligently considered, as to dispense with their examination here.
In that case the party, by his covenant, was restrained from engaging in the business of manufacturing stearin or star candles in Hamilton *603 county, state of Ohio, or at any other place whatsoever in the United States. The covenant was regarded as divisible, and that that part of it which bound Lange not to pursue the business, or give his assistance at any place in the United States, was void, being in general restraint of trade; but, as to Hamilton county, it was held, that if it were attended with certain other necessary requisites, it might be good. These requisites were stated to be, 1st, that the restraint is partial; 2d, that it is founded on a valuable consideration, and 3d, that the contract is reasonable and not oppressive, the presumption being always in the first instance that it is illegal, and must be overcome by the party seeking to enforce it, before relief can be had. The presumption of illegality arises from the fact, that any restraint of the kind tends to oppression by depriving’ the individual of the right to engage in a pursuit or trade with which he is generally most familiar, and, consequently, the community of the services of a skillful laborer; and the general effect must be, more or less, to encourage idleness, and affect the price of such things as had been produced by his labor. These are the general reasons against any restraint of trade; and being founded in the nature of things, cannot be materially varied by any change in the times and circumstances of a people. The judge however, in delivering the opinion in the above case, says, that: “No case is found where such a contract lias been upheld, which covered the whole of England or a state of this Union ;” such restraints are regarded as general. And it will be observed that, in the case before us, the restraint at the least is to the state of Ohio, and hence the agreement is
*604 not capable of such a division as, under any circumstances, would make it a valid one. It is in general restraint of trade. In Taylor v. Blanchard, 13 Allen, 370, where the restraint extended only to the state of Massachusetts, the court said : “We do not think the extent of the territory embraced in a state affects the principle. Whatever may be the extent of the state, the monopoly restricts the citizen from pursuing his business, unless he transfers his residence and his allegiance to some other state or country. Its tendency is to drive business and citizens who are skilled in business from this to other states. If one is not at liberty to carry on his business here, but is at liberty to do so elsewhere, he will be likely to go elsewhere, and employ others to go with him.” And, see also, Chappel v. Rockway, 21 Wend., 157; Dunlop v. Gregory, 10 N. Y., 241, 244; Wright v. Ryder, 36 Cal., 342; Homer v. Ashford, 3 Bing., 328.
The doctrine of Lange v. Werk, was followed in Thomas v. Adm'r of Miles, 3 Ohio St., 274. There the restraint extended to carrying on the business in the city of Cincinnati, or any other point where agencies might be established. It was held that under the facts of that case, whilst the restraint as to Cincinnati was reasonable and might be sustained, yet so far as it attemped'to prevent Miles from competing with any branch that Thomas might establish at any and all other places, it was clearly opposed to public policy and void. It was not departed from in Morgan v. Perhamus, 36 Ohio St., 517. There the restraint was partial. Mrs. Morgan carried on the business of a dressmaker in the town of Felicity, Clermont county, Ohio. She sold her business to another with the good will, and *605 bound herself not to carry it on in the same town, or at any place within such distance as would interfere with the business. Mrs. Morgan commenced to carry on the same business in Felicity and was enjoined. The good will being in general nothing more than the probability that the old customers will resort to the old place for the purpose of trade, it is apparent that, in this case, the restraint imposed was reasonable, being no more than was required to secure the good will of the business to the purchaser; and was not oppressive, as she was at liberty to carry on the same business outsideof the limits to which the good will of her former business, carried on in Felicity, extended. Partial restraints on trade of this character have been generally sustained, and they are the only ones that have have been in this state, or elsewhere, unless it be in a few modern instances to which we will hereafter refer.
But there is a particular feature in this contract, reflecting on its purpose and character that deserves notice, to-wit, the statement to which the Fringelis are required to, and do assent, that the demand for the kind of goods they were then manufacturing was limited in quantity and restricted chiefly to particular sections of the country; and that plaintiff, who was then engaged in the same business, extensively, had ample facilities to supply the demand, “promptly and at reasonable prices.” This was likely introduced for the purpose of showing the reasonableness of the contract; but, when analyzed, tends more strongly to show, that its principal ob j ect was, not simply to acquire the defendant’s business and its good will as an invest-; ment, but to purchase them out of business, that it might have a more complete monopoly of the entire *606 business of making rules ; and, therefore, on principles of public policy, should not receive any aid from the courts in its enforcement! That the field is a limited one, only furnishes the more reason on the part of the public that it should not be engrossed by a single person; and the statement that it has the facilities to supply the public at reasonable prices, lacks perception of the real ground of objection. Certainly we are not called on to relearn how little human cupidity can be trusted when it has the opportunity to enrich itself at the expense of others. A disposition to overlook this feature, only shows how far, in some of the cases, we are getting away from the salutary principles of the common law, which never permitted a person to occupy a position in which his duties were opposed to his interests. No one could be judge in his own case, nor, in a fiduciary capacity, buy of or sell to himself. ■
The case of the Diamond Match Co. v. Roeder, 106 N. Y., 473, is referred to by plaintiff, as supporting the validity of the restraint on. trade imposed by this contract; and we are not disposed to controvert the claim. The defendant Rober, who was engaged in the manufacture, and sale throughout the United States, of friction matches, sold his business with its goodwill to the plaintiff, engaged in the same business, and ag’reed that he would not at any time within ninety-nine years engage in the same business anywhere in the United States, with exception of the states of Nevada and Montana. In an action for a violation of the agreement the restraint was held to be reasonable. In this case and some others, the decision is acknowledged to be a departure from the well established rule of the earlier decisions, notably Mitchell v. Reynolds,1 P. *607 Williams, 181, followed and approved by Ranney, J., in Lange v. Werk. In this ease, and in those similar to it, the question seems to be considered as one wholly between the parties; and, if the restraint is no more than the purchaser requires as a protection to the enjoyment of what he purchased and for which the vendor received a fair consideration, then it is argued that there is no objection to the contract; because the limits of trade and commerce are now so great, under modern conditions, that a general restraint is not more than is reasonable to afford protection to the purchaser in his business. This, as we think, is fallacious, as it ignores the interest of the public in the question, which now, more than at any former time, is involved. All monopolies, combinations and agreements of whatever nature, formed for the purpose of controlling the production and manufacture of commodities are generally considered against public policy, as thereby prices may be unreasonably increased to the consumer, and are almost uniformly entered into for such purpose. Heretofore the right of any trade or business to determine for itself the extent of production and the price that shall prevail, has been stoutly denied by the public. This can only be done by the government, and then only in extreme cases, amounting to a necessity. So general have these agreements become and their attendant evils, as to have arrested the attention of the legislatures of some of the states; and laws have been passed to correct, as far as possible, the evils. And in 1890 the Congress of the United States passed an act, known as the Sherman Law, to protect trade and commerce against unlawful restraints and monoplies. In construing this act, the Supreme Court, *608 in United States v. Freight Association, 166 U. S., 290, 328, held that under its provisions, any restraint of trade affecting the interstate trade and commerce of the United States, is invalid. It had been claimed in argument that it only included such contracts in restraint of trade as were unlawful at common law. These statutes give emphasis to what has been heretofore regarded as a sound public policy bjr the courts.
But beyond this there is still another consideration connected with such monopolies and combinations, that is not to be overlooked from the standpoint of sound political wisdom and economy. It is to the interest of the Republic that there should be, measurably, an equality in the fortunes of its citizens, and one of the best modes of accomplishing this, without the use of arbitrary means, is by encouraging separate and . independent employments and discouraging by law and its administration in the courts, all ten dencies to the concentration of property in the hands of the few — a condition in which there will be a constant unrest and dissatisfaction among the masses, that can bode no good to the nation. It may be safely affirmed, that free institutions cannot long be maintained among a people, where a few, possessed of great wealth, are the employers, and the many are mere laborers, wholly dependent on wages as a means of supporting themselves and families. These considerations, and others of a like character, constitute in great measure, that sound public policy which looks with distrust upon all agreements in restraint of trade; and particularly such as may be used in the formation of monopolies, and the control, by a few, of all individual pursuits.
*609 Therefore contracts whereby men are purchased out of their business and restrained from carrying it on anywhere else, should receive no aid from the courts. No more efficient method could be devised for the creation of a monopoly in any business. It simply requires a combination of persons possessed of a large amount of capital, for the purpose of engaging in a particular business, and purchasing that of all others engaged in the same business, and binding them not to engage in the same business anywhere else. Among the various methods adopted for the purpose of engrossing a particular business, this seems to have become a quite favorite one, when the business may be, and generally is, carried on by individuals on a limited capital; for the reason, no doubt, that in such cases, it is easier to accomplish the desired result in this way, than by the formation of a trust through which an entire business may be carried on — each separate owner as a beneficiary of the trust, receiving its, or his, proportion of the net earnings. To say in such cases that the vendor should be bound not to carry on his business because he has received an adequate consideration for his agreement, is no answer to the objection that the agreement tends to foster the formation of a monopoly and is therefore against public policy.
The reasoning of the cases in which a departure from the common law had been adopted, fails to persuade us that we should disregard the rule that has been so long settled in this state by the decisions of this court; on the contrary, the changed conditions, on which the argument pro *610 ceeds, tend the more strongly to convince us that, in the interest of a wise public policy, it should be more firmly adhered to.

Judgment affi/rmed.