Lawrence *v.* Kidder.

---

MONROE SPECIAL TERM, April, 1851.   *Selden,* Justice.

## LAWRENCE & KING *vs.* KIDDER & SWEET.

A joint and several contract was entered into between the plaintiffs and the defendants, under seal, by which the latter, in consideration of $200, and also in consideration of the purchase, by the plaintiffs, of all the defendants' stock of mattresses and goods for the manufacture of palm-leaf beds, jointly and severally covenanted and agreed with the plaintiffs that from the date of the contract and for five years to come, they would desist from and discontinue the manufacturing, trading, selling or in any manner or form interfering in or with the manufacturing of palm-leaf beds or mattresses or in the materials out of which such beds are made, directly or indirectly, in all the territory of the state of New-York west of the city of Albany, and that they would not sell beds or materials or twist for beds to the agent or agents of

the plaintiffs in the city of Columbus, Ohio. The contract was in the penal sum of $500. *Held* that the contract was void, as being in restraint of trade; the restriction embracing too large a territory.

*Held also*, that a complaint alledging a breach of such agreement by one of the defendants, without any allegation that the other defendant had violated it, did not assign a sufficient breach, and was therefore bad, on demurrer.

While contracts which go to the restraint of trade throughout an entire state or country are uniformly void, those which impose restrictions upon it only in a particular town or district are sometimes held valid.

The law will tolerate no contract which, upon its face, goes to prevent an individual for any time, however short, from rendering his services to the public in any employment to which he may choose to devote himself; nor one which deprives any section of the country, however small, of the chances that the obligor in such contract may furnish to it the accommodation arising from the prosecution of a particular trade; unless it appears that the obligee himself intends to, and can, supply such accommodation.

THIS case became before the court upon a demurrer to the complaint. The action was instituted in June, 1850. The complaint set out a joint and several contract under seal, executed by the defendants and dated October 29, 1849, by which in consideration of the sum of two hundred dollars in hand paid, and other good considerations by the defendants jointly received, and also in consideration of the purchase by the plaintiffs of the defendants of all the defendant's stock of mattresses and goods for the manufacture of palm-leaf beds, the defendants jointly and severally covenanted and agreed with the plaintiffs that from the day of the date of the contract, and thenceforth and for five years to come, they would desist from and discontinue the manufacturing, trading, selling, or in any manner or form interfering in or with the manufacturing of what are called palm leaf beds or mattresses, or in the materials out of which such beds are made, directly or indirectly, in all the territory of the state of New-York west of the city of Albany, and that they would not sell beds or materials or twist for beds to the agent or agents of the plaintiffs in the city of Columbus in the state of Ohio. The contract was in the penal sum of $500.

The complaint alledged that subsequent to the execution of the said contract, and from the first day of December, 1849, until the commencement of this action, the defendant Kidder

Lawrence *v.* Kidder.

had been engaged directly and indirectly in the city of Roches-
ter and elsewhere in the state of New-York west of the city of
Albany, in manufacturing and selling palm-leaf beds and mat-
tresses and in purchasing and selling the materials and twist
out of which such beds and mattresses were made, and that the
said defendants had been interested as a co-partner in connec-
tion with one or more persons, in a manufactory in the city of
Rochester, in which the business of making and selling the said
beds and mattresses was carried on, and had there manufactured
and sold palm-leaf beds and mattresses, and had purchased and
sold large quantities of the materials and twist out of which
the said beds and mattresses were made.

There was no allegation in the complaint that the defendant
Sweet had been engaged, either with the defendant Kidder, or
with any other person, or alone, in manufacturing or selling
palm-leaf beds and mattresses, or in purchasing and selling the
materials or twist from which such beds or mattresses were made.

The defendant Sweet demurred to the complaint upon the fol-
lowing grounds : 1. That the contract or agreement set forth in
the said complaint was a contract in restraint of trade, and un-
reasonable, and therefore void ; 2. That the complaint did not
set forth or alledge that the restraint of trade imposed upon the
defendants by the said contract or agreement was confined to a
particular place, or to such reasonable extent of territory as was
necessary for the protection, security or benefit of the plaintiffs ;
3. That the complaint did not set forth or aver that the defend-
ants at any time since executing the said contract or agreement
had not desisted from and discontinued the manufacturing, tra-
ding, selling or in any mannner or form interfering in, or with,
the manufacturing of what are called palm-leaf beds or mat-
tresses, or in the materials out of which such beds are made,
directly or indirectly, in any or all the territory of the state of
New-York west of the city of Albany, or that they, the defend-
ants, had sold beds or materials or twist for beds to the agent or
agents of the plaintiffs in the city of Columbus, in the state of
Ohio ; 4. That the complaint did not set forth, aver, or show
that the defendants had broken any of the covenants in the

said contract or agreement contained; 5. That the complaint did not set fourth any breach whatever of the said contract or agreement; 6. That the complaint did not state facts sufficient to constitute a cause of action.

*G. G. Munger*, for the demurrer: 1. The contract in this action is void. The rule applicable to restraints on trade in respect of territory is, that all general restraints, and certain limited restraints, are void. (*Mitchel* v. *Reynolds*, 1 *P. Wms.* 181.) The foundation of this rule is a principle of public policy, a regard for the interests of the public in unmonopolized, untrammeled commerce, trade, and the arts, and in having as many as possible industrious citizens engaged in contributing their quota to the aggregate productions of the community. Limited restraints, which were obnoxious to the censure of the courts by the old cases, were those carrying a restraint over more territory than a particular place or parish. At that time, scarcely any business extended beyond these scanty limits. But with an increase of facilities for intercourse among people came an increased extent of territory to be covered by most branches of business; and hence the necessity for modifying the former strict application of the rule. In so doing, the courts have by no means, however, lost sight of its principle. That is still intact. The doctrine is as firmly established at the present moment as ever before, that every contract which exacts more territory from the obligor than is essential to the protection of the obligee has no binding force whatever. (*Harner* v. *Graves*, 7 *Bing.* 735. *Hitchcock* v. *Coker*, 6 *Ad. & Ell.* 438. *Rannie* v. *Irvine*, 7 *Man. & Gr.* 969. *Alger* v. *Thatcher*, 19 *Pick.* 51. *Chappel* v. *Brockway*, 21 *Wend.* 157.) Whether a particular contract is of this description or not is to be tested, to be sure, by the present condition of commerce, trade, and the arts, and not by their circumscribed limits centuries ago. But such limits, though they are wider than heretofore, will be found to have their boundaries.

Such is the rule in its most usual shape. There may be cases however, we apprehend, when it ought to be adopted in

Lawrence *v.* Kidder.

another form. If the restraint caused by the contract covers only sufficient territory to enable the obligee to prosecute his trade or business successfully, it follows that the remainder of the state or kingdom, or so much of the remainder as is equal to the space covered by the restraint, is necessary for the obligor's subsequent successful prosecution of the same trade or business. But if the restraint covers much more than half of the state, the obligor must go elsewhere in order to carry on his trade or business again, for the same proof which shows that the restraint covers no more territory than is demanded by the business of the obligee demonstrates with equal clearness that there is not enough left for the obligor. So long therefore as general restraints are held void, for the reasons which are now and ever have been assigned, so long ought every contract to be considered void which divides the kingdom or state substantially unequally between the parties and in favor of the obligees; for in effect such a contract is precisely that of a general restraint in point of the citizenship of the obligor. The *result* is the same in both cases. The *means* are thus different. In the one case *no* territory is left him; in the other, *not enough.* Would the courts support a contract by which ten men should divide the state of New-York among themselves in such a manner as to give one-quarter of the state to each of the first three, and the remaining quarter among the remaining seven men equally, i. e. to three of the men a quarter each, and to seven of them a twenty-eighth part each of the same state for the same business ? We apprehend that the court would say that " the territory which three of these men have secured to themselves is either necessary or unnecessary for their safety. If the latter, most assuredly they should not be permitted to retain it. If the former, we can not see any chance for either of the seven others to carry on his business without going into another state for sufficient territory. But that would cause us the loss of seven useful members of society in gratifying three others, and consequently we can not support a contract, although limited in its terms which works all the mischief a general restraint could."

Apply these rules here. Tested by the first one, the contract

in this action is clearly void, as the defendants are excluded from at least fourteen-fifteenths of this state. We can not see why the conclusion is not inevitable that if the plaintiffs need all this extent of territory, the defendants must leave the state or abandon their business.

Nor does the contract find more favor in the sight of the first rule. The plaintiffs' business does not require this amount of protection. No business at present followed can possibly require it, none with which the courts have dealt have required or been allowed it.

2. The complaint does not show any breach whatever of the contract it recites. The case appears to be this : the defendants sold out their partnership business, with its good will, to the plaintiffs, and agreed not to continue the same within the prescribed territory. We can very easily understand that each of the partners would be willing to covenant either jointly or severally against the joint act of both, for each could control such a covenant ; but that both would be very loth to become a surety for the other's individual acts ; and such was their intention here undoubtedly. But proceeding upon a strictly literal construction of the covenant, there has been no violation of it. There is no allegation in the complaint that "they" have made or sold mattresses. The covenant is that "they" will not make &c. not that "they and each of them" will not make &c.

*W. S. Bishop*, for the plaintiffs. At the time of the adoption of the common law rule, a certain period of apprenticeship in all the trades was required. These regulations have passed away, and with them the reasons for the rule have ceased. (*Chappel* v. *Brockway*, 21 *Wend.* 160. *Green* v. *Price*, 13 *M. & Wels.* 697.) No good reason for the rule in America, can be shown.

1. This restraint is not general as to *time.* (*Mallan* v. *May*, 11 *M. & W.* 667. *Archer* v. *March*, 6 *Ad. & El.* 959. *Hitchcock* v. *Coker*, 6 *Id.* 438.) 2. It is partial as to territory. The rule is that restraints shall not be general, that is throughout the *kingdom.* Applied to this country, that rule would mean

the territory of the federal government, not of a particular state.
But suppose it means a state, we are not in this case to draw a
meridian line through the city of Albany. The defendants are
only excluded from the usual business part of the state west of
Albany, and this is no more than the protection of the plain-
tiff's, demands. The reasonableness or unreasonableness of a re-
straint is to be judged of by the nature of the business restrained.
A manufacturer supplies much more territory than a mere arti-
san. · But this business of palm-leaf mattress making, is not
a trade or occupation. It is only a very small part of an up-
holsterer's business. Suppose a cabinet maker should agree not
to make a certain kind of chairs or tables, as willow-bottomed chairs
or high-backs, or a druggist should promise not to sell a certain
kind of drug. These would not be restraints on trade, within
the rule. 3. A good reason for the restraint appears in the
pleadings. 4. As to the breach; "they" have not desisted.

SELDEN, J. The demurrer in this action raises two ques-
tions, viz.

1. Is the contract set up in the complaint void as being in re-
straint of trade ?

2. Is the breach assigned sufficient ?

No one who devotes much time to tracing back the most famil-
iar legal principles through the series of decisions by which they
have been established, can fail to perceive how difficult it is in
many cases to ascertain with precision the reasons upon which
the doctrine is based, and yet all know how indispensable this
is to the safe application of the rule. That contracts in restraint
of trade, which embrace the entire kingdom or state, are void is
a doctrine coeval with the common law. It makes no difference
whether the contract is or is not limited in respect to time.
Whether the restraint be for one month or for life, if it be gene-
ral and unlimited in respect to space, the contract is absolutely
void, and no circumstances whatever can justify or uphold it.
The principles of public policy which lie at the foundation of
this rule would seem to be plain and obvious, and yet we find it
urged in many of the cases as an objection to the contract, that

Lawrence *v.* Kidder.

it tended to deprive the person bound, of the means of obtaining a livelihood, as though the personal interests of the contracting party had something to do with the doctrine. Even so late as the case of *Chappel* v. *Brockway*, (21 *Wend.* 157,) Judge Bronson, after stating the general rule, says, " there may be cases where the contract is neither injurious to the public, *nor the obligor, and then* the law makes an exception and declares the agreement valid." It is nevertheless clear that the validity of the contract does not depend in the slightest degree upon the question whether it is beneficial or otherwise to the party bound. The interests of the public alone were considered in the adoption of the rule. Those interests are divisible into two branches, and it it will tend to elucidate the subject to make the distinction.

The welfare of a state is advanced by the increase of its productive industry. It is important, therefore, that each of its citizens should be free to employ himself in that department of labor in which his personal efforts will be likely to add most to the aggregate productions of the country. This is the first and leading reason for the rule in question. But there is another. The convenience of the public requires that all the various trades and employments of society should be pursued each in its due proportion, a result with which the exclusion of any individual from his accustomed pursuits has a tendency to interfere.

These two reasons for the invalidity of contracts in restraint of trade are entirely distinct from each other ; one relating to the wealth and profit, and the other to the convenience of the nation. The advancement of society and the multiplication of tradesmen and artisans of every description, have undoubtedly taken something from the weight of the latter, while they have in no respect diminished the force of the former. Were it an open question, much might be said as to the sufficiency of the reasons upon which the rule was originally founded. But speculation of that sort would be out of place, after the numerous cases in which the doctrine has been asserted. The rule, therefore, still exists and is enforced both in this country and in England, as is apparent from many recent decisions.

But while contracts which thus go to the restraint of trade throughout an entire state or country, are uniformly void, those which impose restraint upon it only in a particular town or district, are sometimes held valid. The principal difficulty attending the whole subject is, to ascertain the precise nature of this exception to the general rule, and the reasons upon which it is founded. In many of the early cases the language of the courts would seem to imply that the adequacy or extent of the consideration had something to do with the validity of the contract. They say that a mere pecuniary consideration is not sufficient; that there must be something, although it does not appear very clearly what, added to this to support the contract. This idea, however, of the necessity of any greater or other consideration for a contract of this description, than any other, was obviously unfounded, and has been exploded by the recent cases. (*Hitchcock* v. *Cocker*, 1 *Mann. & Gr.* 195. *Green* v. *Price*, 13 *Mees. & Wels.* 698.)

Again; it is said in many of the cases that the contract must be reasonable; that it must not impose restrictions upon one party which are not beneficial to the other. In the leading case on the subject, referred to in all the later cases, Ch. J. Parker says that in order to uphold a contract of this kind it must appear "that it was reasonable for the parties to enter into it; that it was a proper and useful contract and such as could not be set aside without injury to a fair contractor." (*Mitchell* v. *Reynolds*, 1 *P. Wms.* 181.) And in the late case of *Chappel* v. *Brockway*, before cited, Judge Bronson says that "whatever may be the pecuniary consideration, it must appear in addition that there was *some good reason* for entering into the contract, and that it imposes no restraint upon one party which is not beneficial to the other." All this however about the reasonableness of the contract, its benefits to the one or the other party, the inadequacy of a pecuniary consideration &c. is obviously founded upon the erroneous idea that in regard to this species of contract the law, not content with effectually protecting the rights of the public, undertakes to extend its guardianship over the private interests of the parties con-

cerned—to supervise their acts with a view to their own individual advantage. This notion can not be reconciled with that uniform policy which leaves parties to make whatever contracts they please, provided no legal or moral obligation is thereby violated or any public interest impaired, nor with some of the adjudications on this particular subject. Judge Bronson himself, in *Chappel* v. *Brockway*, while he adopts the phraseology of some of the old cases, notices the fact that the cases of *Pierce* v *Fuller*, (8 *Mass. Rep.* 223,) and *Palmer* v. *Stebbins*, (3 *Pick.* 188,) can not be reconciled with the idea implied by that phraseology, and yet, he says that it does not appear that the court (in those cases) intended to lay down a new rule.

Another idea advanced in some of the cases is that contracts for the restraint of trade in particular localities are to be sustained because they are beneficial to the public, and to the parties interested, by way of preventing excessive competition. If this were the true reason for the exception, it would be indispensable to show that such competition existed in the particular instance. Because otherwise the courts must be permitted to act upon the presumption that such was the case in any and every district concerning which the question might arise, which would be subversive of the whole doctrine in regard to contracts in restraint of trade, as it would prove that excessive competition was universal.

If we take a general view of the subject, and of all the authorities bearing upon it, we shall see that the exception we are considering rests exclusively upon the principle that whenever the reason of a rule does not exist, the rule itself ceases. This familiar doctrine affords an ample basis for the exception in question.

If the party bound be excluded only from a single town or a district of moderate dimensions, leaving the residue of the country open to him, he has still an ample field left for his industry and exertions in the way in which they may be made most available. There is no necessary loss of profit to the public, arising from such a contract. Why then, it may be asked, does the law annex any other condition to the validity

Lawrence *v.* Kidder.

of such a contract than that there should be territory enough left to afford the party bound ample room for the exercise of his vocation. It is because, as I have already said, the law regards the convenience of the public not less than its profit. It is for the convenience of the community not only that all the various arts and trades should be followed, but that their pursuit should be distributed throughout the different sections of the country, so that every locality should have its appropriate accommodation. Hence the law will not tolerate a contract which excludes one individual from carrying on his trade in a particular locality, unless the circumstances show that his place is to be supplied by some other person of the same trade. This reason harmonizes with those principles of public policy upon which the whole doctrine concerning contracts of this description rests. It makes the whole turn upon questions affecting the public alone, without that mixing up of private with public interests to which much of the language before referred to tends. It accounts perfectly also for the rule that if the restriction cover more territory than is necessary for the business of the obligee, that is, if it cover a territory over the whole of which the obligee can not reasonably be expected to extend his business, it is void—not however for the reason that it is an unreasonable restriction upon the obligor or party bound, but because it embraces a portion of territory from which one party is excluded and which the other party can not supply. The same reason which annexes it as a condition to the validity of such a contract that, (in the language of the cases,) the party with whom the contract is made shall have an interest in the restriction; which means, as I say, that he shall pursue the same business, applies with all its force to a restriction covering more territory than one person can profitably occupy.

The whole doctrine on the subject may be summed up in this: that the law will tolerate no contract which upon its face goes to prevent an individual for any time, however short, from rendering his services to the public in any employment to which he may choose to devote himself; nor one which deprives any section of the country, however small, of the chances that the

Lawrence *v.* Kidder.

obligor in such contract may furnish to it the accommodation arising from the prosecution of a particular trade, unless it appear that the obligee himself intends to and can supply such accommodation.

I am not here establishing any new rule. It is the doctrine to be deduced from all the cases, taken together, and it harmonizes with them all. Thus construed, there is no conflict among the authorities, so far as the points adjudicated are concerned, although many dicta may, no doubt, be found which are more or less inconsistent with the view here taken.

It is nevertheless, in my judgment, the only view which will reconcile the cases at once with each other and with that general principle which precludes all interference with the private contracts of individuals, except upon some ground of public interest or policy.

It now remains for us to apply these principles to the present case, and in doing so, the first question we encounter is—What is the meaning of the expression, " west of the city of Albany," as used in this contract? Does it mean west of a meridian line drawn from north to south through the city of Albany, or does it refer merely to that portion of the state which in common parlance, and according to the ordinary acceptation of the term in matters of business, would be embraced by the phrase ? The plaintiffs insist that the latter is the true interpretation, and that neither the extreme northern or southern portion of the state are included, although they may be west of a meridian drawn through Albany. But the difficulty with this is, that reasonable certainty is an indispensable quality in every contract. If the construction contended for by the plaintiffs were adopted, we should have no criterion whatever for determining as to large portions of the state whether they would or would not come within the terms of the restriction.

I incline to the opinion that a contract necessarily bearing such a construction, would be absolutely void for want of sufficient definiteness and certainty. But if not, when it admits of two interpretations, one of which affords a clearly defined limit to its extent, while the other leaves its boundaries so exceed-

ingly loose and uncertain, no court could hesitate to adopt the former.

The next question is, whether in passing upon contracts of this description, we are to confine our view to our own state, or whether we are to look at the whole United States as constituting a single state or nation. In other words, whether the same rules are to be applied to a contract embracing the state of New-York alone, as by the common law has always been applied to those embracing the whole territory of Great Britain.

This question involves a variety of considerations, and admits perhaps of considerable discussion. But there are one or two leading ideas which, in my view, are decisive of it. In the first place, the people of this state have no control over, or influence upon, the municipal laws of the other states. They may, if they please, impose the most burdensome restrictions upon particular trades. We can not say, therefore, that a restraint which is co-extensive with this state leaves the residue of the union open to the party to pursue unrestrained the same trade. Again ; it is repugnant to the general frame and policy of our government to regard the union, in respect to our ordinary internal and domestic interests, as one consolidated nation. For all these purposes each state is a separate community with separate and independent public interests. It is by no means the same thing to the people of this state, whether an individual carries on his trade within or without its borders. I am therefore of the opinion, independent of authority, that a contract prohibiting to an individual the pursuit of any trade or employment throughout the state of New-York, should be regarded as a contract in total restraint of trade within the rule of the common law.

This seems to have been the view taken by the supreme court in the case of *Chappel* v. *Brockway,* (21 *Wend.* 157,) before referred to ; although it does not appear that the point was then raised, nor did the case necessarily involve it. Judge Bronson says that " contracts which go to the total restraint of trade, as that a man will not pursue his occupation or carry on business any where *in the state,* are void."

This brings me to the question whether the territory em-

CASES IN LAW AND EQUITY [APRIL 1

braced by the restriction in this case is larger than the principle here contended for will warrant.

Questions of this kind would seem to involve considerations which in many cases would be the proper subject of proof. But in none of the cases which have arisen have the courts either submitted the question to the jury or themselves received evidence upon it; but have uniformly assumed to take judicial cognizance upon the face of the contract and the averments in regard to it, of the nature of the trade or employment and the space necessary for its proper and legitimate pursuit. The question is therefore in all cases properly raised by demurrer.

In this case there are no averments showing that manufacturing palm-leaf beds or mattresses requires a more extended field than that of any other mechanical trade; nor is there any thing from which the court can infer that such is its nature.

If we turn our attention, then, to the space which has been heretofore judicially allotted to particular employments, we shall find that in most of the earlier cases the restriction was limited to a city or town, but that some of the later cases have allowed a district more or less extensive surrounding such city or town to be included in such restriction. But it will be seen that no contract restraining trade, which embraces so large a territory as that included here, has ever been upheld; that is, no contract similar to this. Those relating to voyages, lines of transportation, &c. are of a different character.

It would seem singular, to say the least, that any mere mechanical business, which this appears to be, should require more than three-fourths of the entire state for its profitable pursuit. It is true, as urged by the defendants' counsel, that if three-fourths is not too much for the plaintiffs, then it follows that the residue is not enough for the defendants, and therefore if they would pursue their old employment, they must go beyond the state. The contract therefore leads in a measure to the same consequences as one embracing the whole state, which would, if the view I have taken of it be correct, be clearly void. It may be, therefore, that this last consideration alone should be regarded as fatal to this contract.

Lawrence *v.* Kidder.

But it is unnecessary to take this ground, as it is impossible for the court to say judicially, without any averment to that effect, that the state of New-York is not sufficiently extensive to afford a proper field for two establishments for the manufacturing of palm-leaf beds. If then the principles heretofore established upon this subject are to be maintained, it follows conclusively that the restriction contained in this contract is too large, and that the agreement can not be upheld.

I think, too, that no sufficient breach is assigned in the complaint. The defendants have agreed jointly and severally that "*they*"·will desist from, and discontinue their business. Is an averment that *one of them* has carried on the business, equivalent to an averment that *they* have done it? Clearly not. To make out that such an averment shows a breach, ·we must construe the contract as though it read that "they and each of them would desist from," &c. Were it possible for the court to do this in an ordinary case, upon the principle that the language is to be taken most strongly against the party using it, it could hardly be done here. This is a contract entitled to no favor. It is presumed, from its very nature, to be bad until the contrary is made to appear. The court would therefore scarcely feel inclined to strain the language for the sake of sustaining a right of action.

But I doubt whether, in any case, the court would go the length of interpolating the necessary words in the contract. The change produced by this addition would be very important, as it would have the effect to make each of the defendants a guarantor against the separate and independent acts of his associate—a responsibility which, upon the literal reading of the contract, the defendants do not assume.

I am therefore of the opinion that upon each of the main questions presented by the demurrer, the defendants are entitled to judgment. If the plaintiffs wish to amend, they may do so within twenty days after notice of the judgment, upon payment of the costs. Although in the view I have taken of the case, I can hardly see how any amendment can aid them.

Judgment for the defendants.