35 421
13ap213

THE DIAMOND MATCH COMPANY, RESPONDENT, *v.*
WILLIAM ROEBER, APPELLANT.

*Agreement not to carry on business within a certain territory — when it will be sustained — a violation of it may be restrained by an injunction, though a specific amount is to be paid by the terms of the agreement for its breach — Extra allowance — when it cannot be granted.*

Prior to July, 1880, the defendant was engaged in the business of manufacturing and selling friction matches in the city of New York. In the months of July and August of that year he entered into agreements with a foreign match manufacturing company, to the rights of which the plaintiff has succeeded, by which he agreed to sell a lot of land in the city of New York, with the buildings and match manufactory thereon, together with all machinery and materials, for a price named, part of which was paid by the company making the agreement, and the residue of which was thereafter paid by the plaintiff. By the agreement the defendant bound himself not to engage, either directly or indirectly, in the manufacture or sale, or to be in any way or manner whatever interested in the manufacture or sale, of friction matches within any of the several States of the United States of America, or the territories thereof, or the District of Columbia (excepting, however, the right to manufacture and sell friction matches in the State of Nevada and the territory of Montana), unless he did so in the capacity of agent or employee of the company with which he made the agreement.

The instrument then provided that it was upon the express condition that if the said defendant should not so engage in the manufacture or sale of friction matches, then the obligation should be void, otherwise to be and remain in full force and virtue, and that the sum of $15,000 should be recovered by and paid to the company as and for liquidated damages. After having been in the employment of the plaintiff for some time the defendant left it, because it would not comply with his demand for an increase of salary, and

entered into the employment of another company engaged in the manufacture and sale of matches.

*Held,* that upon the application of the plaintiff the court properly granted an injunction perpetually restraining the defendant from manufacturing or selling friction matches in violation of the terms and provisions of his agreement.

That as it was shown that the business of the company with which the agreement was made, and that of the plaintiff, extended all over the country, and that the country, generally, furnished a market for the goods manufactured by that company, the restriction imposed upon the defendant could not be held to be of an unreasonable character and, therefore, invalid.

That it was not invalid as preventing the defendant from pursuing his occupation as a manufacturer and dealer in matches, as he retained the unqualified right to carry on that business in the State of Nevada and the territory of Montana, and as he was at liberty to enter into the service of the company for whose benefit the agreement was made.

That the fact that the agreement provided for the payment of a specific amount as liquidated damages for a breach of its conditions, did not render it improper for the court to grant an injunction restraining the defendant from violating its provisions.

An extra allowance of $400 was awarded to the plaintiff.

*Held,* that as no basis for the allowance of this sum was shown, the order granting it should be reversed.

APPEAL from a judgment in favor of the plaintiff recovered on a trial at Special Term, and from an order directing an additional allowance of costs.

*Robert Sewell,* for the appellant.

*Edward Patterson,* for the respondent.

DANIELS, J.:

The judgment perpetually enjoined and restrained the defendant from manufacturing friction matches within the United States except in the State of Nevada and the territory of Montana, and from selling them, with the same exception, either on his own account, or in conjunction or association with any other person or persons, or as agent, superintendent, manager, employee or servant of any partnership, or association, or corporation carrying on the business of manufacturing and selling friction matches, other than those manufactured by the plaintiff. It was recovered to carry into effect an agreement made by the defendant with Joseph Swift as trustee of the Swift & Courtney & Beecher Company, a corporation created under the laws of the State of Connecticut, and a further agreement

executed by the defendant to that company its successors or assigns. The first agreement was made on the 27th of July, 1880, and the later agreement was executed on the twenty-ninth of August in the same year.    Previous to the execution of these papers the defendant was engaged in the business of manufacturing and selling matches in the city of New York, and by the first agreement which he executed he agreed to sell and convey to Swift as such trustee the lot of land on the southerly side of West Fiftieth street, upon which his match factory and buildings had been erected, and also the machinery, tools, implements and appliances of every kind in the buildings used, or designed to be used, in the manufacture of matches, and to sell and deliver all the finished and unfinished goods and materials for making matches, and the prices of which were to be agreed upon as would be fair and equitable between such parties.    The land was subject to a mortgage of $5,000, and the plaintiff was to be paid as the further consideration for the sale of it, together with the buildings, machinery, tools, implements and appliances the sum of $28,000, which he was to receive in the shares of the increased capital stock of the Swift & Courtney & Beecher Company at the par value thereof.    This purchase-price, together with the stock and materials for making matches at the prices for which they were taken, amounted to the sum of $46,724.05, on which the defendant was paid in cash $18,724.05, leaving the balance of $28,000 to be afterwards satisfied.

By the agreement which he entered into for the sale of the property the defendant covenanted and agreed that he should and would become bound to Swift, the trustee, and to the company respectively, in the penal sum of $20,000, as liquidated damages, that he, the said William Roeber, should not, and would not, at any time thereafter, directly or indirectly, engage in the manufacture or sale of matches within the limits of the United States and the territories thereof; nor aid or assist any one else to do so within said limits; nor have any interest, directly or indirectly, in the business of manufacturing and selling matches within said limits, except as an employee of the said the Swift & Courtney & Beecher Company, or its trustees aforesaid.    The final agreement was afterwards taken to the company itself, and was in the sum of $15,000, by which the defendant, for the period of ninety-nine years, bound

himself not to engage, either directly or indirectly, in the manufacture or sale, or to be in any way or manner whatsoever interested in the manufacture or sale, of friction matches within any of the several States of the United States of America, or the territories thereof, or the District of Columbia, excepting, however, the right to manufacture and sell friction matches in the State of Nevada and the territory of Montana, unless he did so in the capacity of agent or employee of the Swift & Courtney & Beecher Company. And added to that agreement was the following condition:

"Now, the condition of this obligation is such, that if the above bounden William Roeber shall not, and will not, at any time or times within ninety-nine years from the date hereof, directly or indirectly engage, or be in any manner whatsoever interested in the manufacture or sale of friction matches within any of the several States of the United States of America, or within the District of Columbia, excepting within the State of Nevada and territory of Montana as aforesaid, then this obligation to be void, otherwise to be and remain in full force and virtue; and the said sum of fifteen thousand dollars to be recovered and paid to the said the Swift & Courtney & Beecher Company, as and for liquidated damages."

The company named in the agreements discontinued the business of manufacturing and selling matches, and the plaintiff was incorporated under the laws of the State of Connecticut as a corporation for the manufacture and sale of matches and the transaction of other business. It became the successor of the company mentioned in the agreements executed by the defendant, and those agreements were assigned by the Swift & Courtney & Beecher Company to the plaintiff, and the defendant afterwards settled with the plaintiff for the balance remaining unpaid to him upon the sale of the property. This settlement was made by the execution and delivery to him of two notes for the sum of $3,000 and $2,000, respectively, and issuing to him seventy shares of preferred and one hundred and thirty shares of common stock of the plaintiff for the remaining sum of $20,000, and he entered into the employment of the plaintiff. These facts entitled the plaintiff to the right to insist upon the observance of the agreements entered into between the defendant and the preceding corporation. As much as that was contemplated by the agreement

last executed by the defendant, in the sum of $15,000, for he bound himself by that agreement not only to the Swift & Courtney &. Beecher Company, but also to its successors or assigns. And by the facts that the plaintiff became the successor of the other company, and the assignment was made to it of these agreements, the defendant became bound to observe their stipulations and abide by them in its favor.

He did not do that, but afterwards entered into the employment of another company engaged in the manufacture and sale of matches, and it was to restrain and prevent him from continuing in that employment that this action was brought against him. He appears to have left the employment of the plaintiff of his own volition, upon a disagreement arising concerning the amount of his salary, he claiming more than the officers of the plaintiff were willing to pay him. It was stated by him in the course of his evidence that he previously bought out the stock of another person engaged in the business of selling matches, with the consent of one or more of the defendants' officers, and that by such consent the restraints imposed upon him by his agreements had been removed. But the evidence proved that the person who was engaged in this business was under a contract with the plaintiff to sell only their matches and those of no other person. Assenting, therefore, to the purchase by the defendant of that business, when he declined to remain longer in the service of the plaintiff, did not relieve him from the obligations assumed by him in his agreements. Further evidence was given also, very clearly showing that it was not intended at any time to release the defendant from these obligations, but that they were designed to be insisted upon, and in the event of a violation of them by him, that resort would be had to legal proceedings for the purpose of preventing its continuance. The plaintiff in no form subjected itself to the forfeiture of its right to insist upon the observance of the agreements made by the defendant, but it was entitled to maintain the action against him, if the agreements, as they were entered into, became legally binding upon the defendant. That they were not so obligatory was the main ground of defense taken upon the trial of the action, as it also has been in support of the appeal from the judgment. It has been urged that the agreement entered into by him to abstain from the manufacture and sale

of matches throughout the United States, with the exception of the State of Nevada and the territory of Montana, was too broad to be legally sanctioned or sustained. And in support of this objection, the authorities have been relied upon, in which it has been said that an agreement in restraint of trade was unlawful when not by its language limited to a particular place, or within certain restricted limits, and that it could in no event transcend the bounds of the State in which it should be made. That is the tenor and effect of what was said in *Chappel* v. *Brockway* (21 Wend., 157); *Dunlop* v. *Gregory* (10 N. Y., 241), and *Lawrence* v. *Kidder* (10 Barb., 641). But these cases were presented upon facts which were of a local description, or included within circumscribed limits, and what was said in the opinions beyond the consideration of their effect was not presented by the controversies before the court and was not required to make a disposition of them. What it was stated in general terms could not be done through the intervention of an agreement of this nature was *obiter*, and therefore not binding as authority in succeeding controversies. When the rule which was announced as prevailing was adopted, traffic and trade were ordinarily confined to limited localities, and it was an entirely proper one therefore for that state of business affairs. But since that time business and commercial transactions have transcended the limited bounds to which they were then subjected, and by means of the great advantages supplied by railways and telegraphs, have extended over nearly limitless ranges of country. Classes and descriptions of business confined to restricted localities previous to the development of these inventions and enterprises are now able to extend their transactions legitimately not only beyond the bounds of the State in which the business itself may be carried on, but to the outmost bounds of the United States itself, and even into foreign countries. The rules therefore which were deemed to be controlling under the preceding state of business affairs are entirely too restricted for the control and government of the wide-spread transactions of business in more modern times. The business of the civilized world has been progressive, and by means of these advantages capable of extending itself to the outward bounds of civilization, and its transactions requires that the legal principles previously observed should in like manner be enlarged, extended and applied. That has ordinarily been done to meet the develop-

ments and extensions in the transaction of business; and the reason upon which the principle has been maintained, by which a person was permitted to bind himself upon a proper consideration that he would not engage in a competing business within a prescribed locality, will authorize and sanction its extension in an equal degree and render it applicable to the enlarged bounds which may now be prescribed for business transactions. What the courts have endeavored to do at all times has been to adjust the application of legal rules to what may appear to be just and necessary; and accordingly it has been held that only such restraints upon trade will be held to be invalid as violating public policy as are unnatural and unreasonable, and not required by the parties for their protection in the ordinary and legitimate course of their dealings. Upon this subject it has been said that " the restraint on one side, meant to be enforced, should in reason be co-extensive only with the benefits meant to be enjoyed on the other." * * * " If it affords only a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public, it will be sustained." (*Collins* v. *Locke*, L. R., 4 App. Cases, 674, 686.) And it has been further declared that " if considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circumstances, with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party, in whose favor it is imposed, reasonable as between them, and not specially injurious to the public, the restraint will be held valid." (*Hubbard* v. *Miller*, 27 Mich., 15, 19.) And that was approved as a just explanation of the law in *Hedge* v. *Lowe* (47 Iowa, 137). And substantially the same view of the law was declared in *Rousillon* v. *Rousillon* (L. R., 14 Ch. Div., 351, 368); and also in *Morse, etc., Company* v. *Morse* (103 Mass., 73), where two cases were approved of, which generally restrained the defendant from writing for, or publishing, periodical papers in which the other party had acquired the right by contract to insist upon the restraint. The same view was taken in *Leather Cloth Company* v. *Lorsont* (L. R., 9 Eq., 345). It is true that another element entered into the consideration of that case as a business secret, but still it was considered that the obligation not to manu-

facture leather cloth in any part of Europe was good and binding upon the defendant. This case was approved, although not followed, in *Allsopp* v. *Wheatcroft* (L. R., 15 Eq., 59, 65). But the doctrine acted upon in the last case was not approved in *Rousillon* v. *Rousillon* (*supra*), which by implication has been sanctioned in *Printing, etc., Company* v. *Sampson* (L. R., 19 Eq., 462). A like case in its legal effect was presented by *Stearns* v. *Barrett* (1 Pick., 143), where an agreement not to use certain machines in any of the United States, except Massachusetts and Rhode Island, was held to be legal. A like view of the law was sustained as proper in *Oregon Steam Navigation Company* v. *Winsor* (20 Wall., 64), where it was said that "a stipulation is unobjectionable and binding which imposes the restraint to only such an extent of territory as may be necessary for the protection of the party making the stipulation, provided it does not violate the two indispensable conditions that the other party be not prevented from pursuing his calling, and that the country be not deprived of the benefit of his exertions." (Id., 69.) Authorities have been cited which are not in harmony with this broad and liberal rule, but it has been maintained to such an extent as to render them ineffectual as legal guides. The prevailing tenor and effect of the law is now as it has been stated, and no time therefore should be devoted to consider these conflicting cases.

Evidence was given upon the trial which sufficiently sustained the fact to justify its adoption by the court, that the business of the Swift & Courtney & Beecher Company, and afterwards of the plaintiff itself, as it was described, extended all over the country; that the market for the goods manufactured was generally throughout the country, and that the defendant himself had previously carried on a widely extended business of the same description. The contract taken from him was, therefore, not of an arbitrary character, but it was to protect the business of the Swift & Courtney & Beecher Company, and the plaintiff, its successor, from injurious competition by subsequent acts and conduct on the part of the defendant; and under the authorities, to which reference has been made, it was not broader in its restraints than the profitable and prosperous transaction of the business of the companies probably required that to be made.

The agreements did not deprive the country of the defendant's services, nor prevent him from pursuing his occupation as a manufacturer and dealer in matches.  He retained the unqualified right to carry on that business in the State of Nevada and the territory of Montana, and he was at liberty to enter into and continue in the service of the company for whose benefit the agreements were made; and it seems to have been contemplated that he should be retained in that employment and the employment of the succeeding corporation.  He was not prevented from carrying on or pursuing his occupation, but was at liberty to do that in either of the excepted modes, and the occupation afforded to him by the companies was only terminated by himself when he was unable to obtain the advancement of his salary from the sum of $2,500 per year to that of $3,600.  These facts prevent the agreements from being brought in conflict with any legal principle sustained by the authorities.  They were, on the other hand, such agreements as it was competent for the defendant to make; and he did make them as an inducement for the purchase of the property and business he was willing to sell.  In that manner a corresponding advantage was secured to him, one that, in his judgment, was a fair equivalent for the restraints he voluntarily imposed upon himself.  And as these restraints were no broader than the business of the company required they should be, and no broader than the courts have sanctioned in other cases, they should be sustained and the defendant prevented from violating the obligations imposed by them upon his future conduct.

The agreements as they were made cannot be held to have been inequitable under the circumstances existing at the time when they were entered into by the defendant, and their observance may be appropriately maintained by an action of the description of that brought by the plaintiff against the defendant.  The judgment awarded was the ordinary one pronounced to secure the observance of similar obligations.  The fact that a specific amount was agreed upon by him, which he might be obligated to pay in case of a violation of his agreements, did not render this intervention of the court improper.  In other cases the same course has been followed. (*Coles* v. *Sims*, 5 De Gex, McN. & G., 1 ; *Long* v. *Bowring*, 33 Beav., 585 ; *Phœnix Ins. Co.* v. *Continental Ins. Co.*; 87 N. Y., 400.)

Other points were presented upon the argument in support of the appeal, but as those which have been considered are controlling over the controversy it has become unnecessary particularly to examine them. The same observation is applicable to the evidence which was offered and excluded upon the trial. If it had been received, it would not have changed the aspect of the case in any material respect; for the facts would still remain that the defendant had imposed, by his agreements, these restraints upon himself; that they were not unreasonable in their extent, and he had violated them by entering into an employment which he had agreed not to follow. The judgment accordingly seems to have been right, and it should be affirmed, with costs.

The court made an allowance to the plaintiff of the sum of $400, but there seems to have been no basis supplied by the case for the order. It is obnoxious to the ruling made in *Conaughty* v. *Saratoga County Bank* (92 N. Y., 401), and *People* v. *Genesee Valley Canal Railroad Company* (95 id., 666).

This order should be reversed, together with ten dollars costs and disbursements, to be set off against the judgment for costs recovered by plaintiff.

DAVIS, P. J., concurred; BRADY, J., concurred in the result.

Judgment affirmed, with costs; order reversed, with ten dollars costs and disbursements, to be set off against the judgment for costs recovered by plaintiff.