Freedman, J.
On or about August Vi, 1882, the plaintiff’s firm, Bingham, Daley & O’Hara, manufacturers of printers’ rollers and composition, agreed to purchase, and did purchase, the business of a rival firm, named W. H. H. Rogers & Co., inclusive of the stock, machinery, assets, contracts and good-will of the last named business. One of the terms of the purchase was that Rogers & Co. should procure the defendant, one of their employees, and as such having knowledge of some secrets relating to, and possessing skill in the manufacture of printers’ rollers and composition, to execute, and the said defendant did execute to the plaintiffs an agreement, whereby he bound himself, that he would “ not engage, directly or indirectly, as principal, agent or employee, or in any capacity, either alone or in connection with any person or persons, individually, or in any firm, association or corporation, or in any manner have to do with the business or manufacture of printers’ rollers and composition, or in any wise assist, support or promote any other person or persons, firm, association or corporation in such business or manufacture, or allow such business or manufacture to be in any wise carried on, in or in connection with any establishment, which I may have to do with and be able to control, either in the city of New York, or at any point within a *92 radius of two hundred and fifty miles therefrom, so long as said Bingham, Daley & O’Hara, their survivor, survivors or successors, shall continue in such business or manufacture.” The agreement expressed the receipt of a “ good, valuable and sufficient consideration ” from Rogers & Co., and the receipt of one dollar from the plaintiffs.
The action is brought to restrain the defendant from violating the said agreement. All claim for damages having been waived, and there being no controversy as to the facts as stated, the right of the plaintiffs to injunctive relief depends upon the validity of the agreement sought to be enforced, and the presentation of a sufficient equity calling for its enforcement.
The defendant denies the existence of a sufficient equity, and insists that the agreement is invalid (1), because, upon its face, it is in restraint of trade ; and (2), because, in substance, it is against the statute law of this state.
At common law, persons competent to contract are free to make their contracts to suit themselves, and the law does not restrict them except to prevent injury to the public. But any contract, although not expressly prohibited by positive law, which, in its operation, would injure the public, or which contravenes any established interests of society, or conflicts with the morals of the times, is void. The promotion of the public welfare is the first consideration of the law. That contracts in restraint of trade, which embrace the entire kingdom or state, are void, is a doctrine coeval with the common law. It is said to have sprung from the English law of apprenticeship (2 Parsons Contr. 7th ed. 751). It was also a principle of the Roman law (Puff. lib. 5, c. 2, §§ 3, 21 H. VII. 20, cited in Mitchel v. Reynolds, 1 Smith's L. C. 709 ; S. C., 1 P. Wms. 181).
The reasons for the rule are stated by Selden, J., in Lawrence v. Kidder (10 Barb. 641), to be as follows, viz : “ The welfare of a state is advanced by the increase- of its productive industry. It is important, therefore, that each *93 of its citizens should be free to employ himself in that department of labor in which his personal efforts will be likely to add most to the aggregate productions of the country. This is the first and leading reason for the rule in question. But there is another. The convenience of the public requires that all the various trades and employments of society should be pursued each in its due propor-. tion—a result with which the exclusion of any individual from his accustomed pursuits has a tendency to interfere. ” Originally, the rule was that all contracts in restraint of trade, though limited in their operation, were void. And especially if ithe restraint was general and unlimited in respect to space, the contract was absolutely void, no matter how much it was limited in respect to time. As civilization advanced, commerce extended, and the social conditions changed, the rule became less stringent. The modern rule is that a contract in partial restraint of trade, restricting it within certain reasonable limits or times, or confining it to particular persons, is valid, if founded upon a good and valuable consideration, and the test of the reasonableness of any restriction is, whether it is such as only affords a fair protection to the party in whose favor it is made, and at the same.time does not militate against the public interest (Dunlop v. Gregory, 10 N. Y. 241; Mackinnon Pen Co. v. Fountain Ink Co., 48 Super. Ct. 442, and cases there cited). But the reasonableness must X be made to appear. Nothing will be presumed in favor of such a contract. It is presumptively void, and the reasons , and the facts which render it valid, must be shown by the I party seeking to enforce it (Ross v. Sadgbeer, 21 Wend. 66).
In the case at bar the contract is clearly unreasonable as to space. The space covered by the contract includes about three-fourths, if not nine-tenths, of the territory of the state of New York, the entire states of Connecticut, Rhode Island, Massachusetts, New Jersey and Delaware, and portions of the states of Vermont, New Hampshire, Maine, Pennsylvania, Maryland and Virginia.
*94 That the contract would be void beyond doubt in the states entirely covered by it, has been impliedly conceded by the plaintiffs, but they insist that this is not a matter of which the courts of New York will take cognizance, as. long as they, the plaintiffs, are willing to confine themselves to the enforcement of the contract within the territorial limits of New York ; and they consequently pray for only an injunction embracing those parts of this state which are covered by the contract. Under the decisions of Saratoga Co. Bank v. King (44 N. Y. 87), and Arnot v. Pittston & Elmira Coal Co. (68 N. Y. 558), it may be a question whether the point thus taken by the plaintiffs is tenable. But it is not necessary to determine it, for the contract covers too large a territory even in the state of New York.
The restraint practically embraces almost the entire state, for out of sixty counties it leaves to the defendant only the comparatively insignificant ones of Niagara, Orleans, Genesee, Erie, Wyoming, Chautauqua and Cattaraugus, and parts of the counties of Monroe, St. Lawrence, Franklin, Clinton, Livingston, Jefferson and Allegany, and out of all the important cities, it leaves to the defendant only Rochester and Buffalo. Upon this point, therefore, the case is fully covered by the decision in Lawrence v. Kidder (10 Barb. 641), in which case the restraint extended to the territory of the state west of Albany, and the decision of Homer v. Graves (7 Bing. 735), in which case the agreement was that a dentist would abstain from practicing his profession within one hundred miles of the city of New York.
The contract is also against the spirit, if not the letter, of the statute of this state, which provides as follows, viz: C£No person shall accept from any journeyman or apprentice any contract or agreement, nor cause him to be bound by oath or otherwise, that after his term of service expired such journeyman or apprentice shall not set up his trade, profession or employment, in any particular *95 place, shop, house or cellar, &c.” (III. R. S. 6th ed. p. 180, § 51 [§ 39], 7th ed. Vol. III. p. 2353, § 39).
The statute, as will be seen, applies not merely to employers, but to every person, and the next section imposes a penalty upon “ every person accepting such agreement.” The defendant was what Mr. Bingham, one of the plaintiffs, in his testimony, called “ a journeyman roller-maker,” in the roller factory of Eogers & Co., and this admission is sufficient for the purposes of this action, in which the plaintiffs invoke the powers of a court of equity, even if under a prosecution under the statute it were necessary to show that the defendant regularly learned the trade of roller-making, &c., as an apprentice, and in due course of time became a journeyman. For present purposes, it is quite sufficient to treat the statute as a re-enactment of the common law doctrine relating to contracts in restraint of trade made by apprentices or journeymen.
The considerations so far stated increase in force when the plaintiff’s case is considered as a whole. The business of the plaintiffs’ firm consists in manufacturing printers’ rollers, and a composition with which they are covered. In that business they are liable to competition from other firms. Each firm, including that of plaintiffs, has its own processes concerning the use of certain materials and the proportions in which they are used, and each claims superiority for its own products in consequence of the processes employed. The plaintiffs concede that there is nothing about their processes which was, or can be patented, and that there are other firms which know of such processes. One, Jonas E. Cole, while employed by the plaintiffs, became acquainted with the processes of the plaintiffs, and, upon being discharged, he entered the employ of Eogers & Co. The defendant then was in the employ of Eogers & Co., and in that he subsequently acquired the knowledge which Cole had. In the course of time, both Cole and the defendant became quite skilled in the manufacture of rollers and- the composition with *96 which they were to be covered, and their combined skill gave importance to Rogers & Co., as rivals and competitors of the plaintiffs. To overcome this rivalry and competition, the plaintiffs bought out Rogers & Co., but, instead of taking Cole and the defendant into their employ, they induced Rogers & Co. to get from each of them an agreement not to exercise their trade thereafter. For all that appears, it is the only trade from which either of them can gain a livelihood. On the other hand, there is no evidence that the facihties"’of"the plaintiffs for supplying all the demands of the entire trade are sufficient for the territory covered by the contract, nor is there any evidence of an adequate consideration beyond what appears upon the face of the instrument. As nothing is presumed in favor of a contract of this kind, and the burden of showing the reasons and the facts making it valid, rests upon the party seeking to enforce it, the plaintiffs have failed to make out a case which calls for the interference of a court of equity. Whatever reasons may exist in favor of a contract between vendor and vendee, or between partners agreeing upon a dissolution, whereby the good-will of a business purchased, or taken and accepted as a valuable part of the business, is protected against subsequent acts of the vendor or the retiring partner in derogation of the sale or the settlement, or which may be urged in favor of patented inventions, have no application to the case at bar, which is the case of an employee who is sought to be condemned to idleness so long as the plaintiffs and their survivors or successors shall continue in the business, which would practically prohibit the defendant forever. To enforce such a contract would make the individual as well as the public suffer injury, for the capacity of an individual to produce is not only a source of gaining a livelihood for himself, but constitutes his value to the public.
The complaint must be dismissed, with costs.