# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed October 11, 1897.

## IN THE MATTER OF THE TRUST ESTATE OF HENRY EVANS, JR.

*John T. Mason, R., Charles S. Hayden, Moses R. Walter, Sams & Johnson, James E. Ingram, Jr.,* and *H. N. Abercrombie* for creditors.

*Steele, Semmes, Carey & Bond* for George P. Benjamin.

STOCKBRIDGE, J.—

On December 30th, 1885, Henry Evans, Jr., and George P. Benjamin entered into an agreement, which was

in substance that all goods manufactured by Mr. Evans, with the exception of those sold and delivered by him to the Baltimore trade, or consigned by him to D. E. Morphy, of New Orleans, were to be sold to, or through, the said Benjamin, and upon all such sales made to or through the said Benjamin he was to receive in addition to a certain stipulated trade discount for anticipation of payment, a commission of five per cent. So far as appears by the testimony and correspondence, this agreement stood unmodified in any respect down to the 25th day of September, 1894, upon which date what has been characterized by counsel as a new agreement, but which seems rather to have been a modification of certain of the terms of the original agreement, was entered into between the parties. By this agreement of September 25th, 1894, Mr. Evans agreed to allow Mr. Benjamin a commission of five per cent. on his orders below the lowest price at which he would sell to any other parties, excepting the C. A. Conklin Manufacturing Company, of Atlanta, Georgia, and Butler Brothers, of New York and Chicago, and with respect to these that the prices to them should in no case net lower than the prices to Mr. Benjamin with the commission off.

Under these two agreements the parties had a large number of transactions down to the 1st of April, 1896, when it is conceded all agreements were terminated in accordance with a provision which is contained in both the letters of December 30th, 1885, and September 25th, 1894, and which are treated by the parties in their dealings, and by the counsel in this case as embodying substantially the agreements between Messrs. Evans and Benjamin. Mr. Evans having failed his estate is now being distributed among his creditors, and two claims are filed upon the part of Mr. Benjamin, arising out of alleged violations of each of these agreements. There has been allowed by the auditor a dividend on first, a claim for $7,962.04, which may be called the commission claim, being made up of commissions claimed as due on sales made by Mr. Evans to parties other than the Baltimore trade and than Mr. Morphy, and therefore parties within the territory which would have appeared to have been given over exclusively to Mr. Benjamin. There is a division in this claim at the date of September 25th, 1894, based on what was apparently the verbal understanding of the parties, though entirely unmentioned in the letter of that date by which Mr. Evans was to have the right to sell to a somewhat wider field than that reserved to him in the agreement of 1885, but this division of the account is at this time immaterial. The second claim made is characterized as a merchandise or rebate account, being for an alleged difference in the selling price made by Mr. Evans to Mr. Benjamin, and that made to other parties in controvention of the agreement of September 25th, 1894.

1. With reference to the Commission Account exceptions have been filed to its allowance by certain of the creditors of Mr. Evans upon a variety of grounds, chief among which are those of limitations as to a portion of the claim, and as to the whole of it that the contract was unilateral and lacked mutuality and that the contract or agreement under which these commissions are claimed was a contract in restraint of trade, and therefore void.

As this objection goes to the roof of the entire claim for commissions, and if well founded would compel the Court to set aside all that portion of the claim, it is proper to first consider it.

Contracts in restraint of trade are universally laid down as being void upon grounds of public policy, but the principle, while apparently simple, is involved in much difficulty in its application to the particular case, and hence there are to be found a large number of conflicting decisions. The rule in relation to the invalidity of such contracts was made under a condition of things and a state of society different from those which now prevail, and for this reason the rule laid down in the earlier cases is not regarded as inflexible, and has been considerably modified. Contracts are met which like the present are not in complete restraint of trade, but only partially so, and in such cases public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than the protection to the other party requires, the contract may be sustained. "The question is whether under the particular circumstances of the case, and the nature of the particular contract involved in it, the contract is or is not unreasonable."

Gibbs vs. The Baltimore Gas Co., 130 U. S. 396.

McCurry vs. Gibson, 108 Ala. 451.

The rule of reasonableness as the test by which to measure the validity or invalidity of such contracts is not of recent origin. It may be found laid down as early as the case of Hitchcock vs. Coker, 6 Ad. & E. 438, and was put into almost its present phraseology by Chief Justice Tindal in Horner vs. Graves, 7 Bing. 735. See also Brewer vs. Marshall, 19 N. J. Eq. 547.

In its application to a contract like the one involved, it is well expressed in the case of Ross vs. Sadgbeer, 21 Wend. 168, where the Court says that "the rule is not that a limited restraint is good, but that it may be good. It is valid when the restraint is reasonable and the restraint is reasonable when it imposes no shackle upon the one party which is not beneficial to the other." The contract in this case was as had been said, a limited one, in its restraint upon the dealings of Mr. Evans, it reserved to him the right to make sales to the Baltimore trade and Mr. Morphy, but nothing beyond that, except to and through the present claimant, Mr. Benjamin, but it nowhere provided nor was there any agreement whatever upon the part of Mr. Benjamin to take the entire output of the manufacture of Mr. Evans, other than that needed for the Baltimore trade and Mr. Morphy, or even a certain specified amount per month, or per annum, or even a single dollar's worth of the manufactured goods of Mr. Evans. Not merely this, while not in terms limiting, it did, by implication, limit the amount which was to be sold either to the Baltimore trade or to Mr. Morphy, when it declared it to be understood that these consignments will not be of such magnitude as will interfere with the regular trade. It was clearly, therefore, unilateral, lacking in mutuality and in partial restraint of trade. The question, therefore, is whether a contract of this partial restraint is valid or void at law, as being unreasonable, and the best manner in which to answer that is to examine some of the cases which, in their facts, present a close analogy to the one under consideration. In the case of Young vs. Timmins, 1 Tyrwhitt's 226, there was an agreement by which a brass-founder was to work exclusively for certain factors, they

not undertaking to find him full employment, and reserving the right to employ others, and to put an end to the agreement at three months' notice. London, and six miles around it, were exempted from the agreement. The similarity to the present case will be apparent from this mere statement of the facts, and the Court there held the agreement bad, on the ground that there was no obligation on the part of the factors to give the brass founder any work if they did not want to, just as in the present case there is no obligation upon Mr. Benjamin to buy one dollar's worth of Mr. Evans' product unless he saw fit. It is true that in deciding this. the learned judge used language which is sometimes quoted as authority for the proposition that the agreement was bad for want of an adequate consideration, a ground which certainly in this State would be insufficient, since the Court will not attempt to inquire into the adequacy vel non of the consideration of such contract, but while this language was used, there runs through the entire decision the manifest idea of the unreasonableness of the contract. A case in many respects even stronger than the one now under consideration was that of Keeler vs. Taylor, 53 Pa. St. 463. In this case the defendant in consideration of the plaintiff teaching him how to make platform scales and of employing him at a certain sum per day agreed not to make scales for anyone else (except under the plaintiff's written consent), upon a penalty for each scale manufactured for anyone else. The defendant broke the agreement and the complainant filed a bill for an account and payment, but the Court refused the prayer on account of the unreasonableness of the agreement, holding that it was void at law; and also because if it were not void a chancellor would regard the hardship of the bargain, the prejudice of the public, and would withhold his hand from enforcing it. It will be observed that in that case there was no lack of mutuality as exists in the agreement in the present case, and yet the position of the Court was determined, and determined solely by the reasonableness of the contract upon its face. A still more recent case closely analogous to the present is that of the American Cotton Oil Company against Kirk, 34 U. S. App. 60. Here there was a contract for the sale of 10,000

barrels of oil, providing that the vendor was to deliver the oil to the vendees at a stipulated price in such quantiries per week as vendees might desire, and that the price was to be paid as delivered, but containing no agreement on the part of the vendee to receive 10,000 barrels, and the contract was held void and not binding for its want of mutuality, which is but another way of saying its unreasonableness.

But it is urged that even though the contract was one which was unreasonable in other respects yet since it contained a provision by which it might be terminated upon three months notice by either party, that such provision will obviate any objection upon the ground of unreasonableness. This however is not the view which has been adopted by the Courts; and in a number of cases it has been distinctly held that a limitation as to time will not cure the illegality, if in other respects the contract be an unreasonable one.

Ward by Byrne, 5 M. & W. 548.

Wiley vs. Baumgardner, 97 Ind. 66.

Lawrence vs. Kidder, 10 Barb. 641.

Reading this contract between Messrs. Evans and Benjamin in the light of the adjudicated cases, the great weight of authority[1] seems to be upon the side that it was unreasonable and void at law, from its inception, and if so, it is manifestly clear that the voluntary act of Mr. Evans in paying certain commissions as appears from the evidence he did in accordance with its terms, could not have operated at any time to estop him in a suit at law from setting up the illegality of the contract, and therefore that there is no bar to these exceptants raising the question, and in so far as the account stated by the auditor makes any allowance to Mr. Benjamin upon a claim based upon commissions on sales made to or through him the exceptions must be sustained.

2. With reference to the rebate account. Much of what has already been said with respect to the commission account, or claim for commissions under the agreement between Messrs. Evans and Benjamin, would apply with equal force with respect to this account, but would not of necessity be conclusive with regard thereto in as much as it may and has frequently occurred that contracts such as were made between these parties may be valid in part and

void in part, but without entering into the discussion of that question in its effect upon this account, there is another and insuperable objection to the allowance made by the auditor on this account. That there was a breach of the agreement of September 25th, 1894, appears clearly from the proof, and upon that breach Mr. Benjamin undoubtedly had a claim for damages against Mr. Evans for his violation of the agreement, but such a claim was and only could be a claim for damages, not a debt; there was no provision in the agreement of September 25th, 1894, by which any penalty was stipulated as the measure of its violation; it was not the case of a lease where there was the specified amount in the nature of rent, as was the case of Sweatman's Appeal, 150 Pa. St. 369. There is no reason apparent why Mr. Benjamin's claim upon this account should be limited simply to the difference in price at which goods were sold to him and those at which they were sold to other parties, he might with entire propriety have added to such difference in price an element of commission or profit, and the mere act that he has not seen fit to do so in making up his claim, but has contented himself with asking for simply the difference between the prices made to him and the lowest prices made to others, cannot change the character of his claim as being one of damages, and unliquidated damages, and there is no principle of law or equity upon which, in the distribution of a fund in the hands of an assignee or trustee, allowance can be made where the claim is purely one of unliquidated damages. I am of opinion, however, that this second contract is, if possible, more unreasonable than was the first contract; there is nothing whatever in it which would debar the present claimant at any time during the continuance of the contract, in case the price of goods depreciated from going back to all sales made subsequent to the commencement of the contract, and demanding with equal right a rebate on them, and should the market continue to go down while such a contract was in force, there would be nothing to prevent him from going back and demanding and collecting these rebates, not once, but over and over again upon the same sales, than which nothing could be more unreasonable, as the mere statement of the facts will suffice

to show. The exceptions to both of these claims will therefore be sustained.